LYONS, Justice.
Jeffrey Taylor Lagrone filed an action in the Jefferson Circuit Court against Norco Industries, Inc., Alabama Jack Company, Inc., and Fisher Products, Inc., seeking damages under tort claims and breach-of-warranty claims arising from a brain injury he allegedly sustained when he was struck in the head by a jack. Fisher Products filed a motion to dismiss the claims against it, alleging that the trial court did not have personal jurisdiction over it. The trial court granted the motion. Lagrone seeks a writ of mandamus ordering the trial court to vacate its order granting Fisher Products’ motion to dismiss for lack of personal jurisdiction. We grant the petition and issue the writ.

Procedural History

Lagrone allegedly suffered a serious brain injury when he was struck in the head by a pneumatic-lift jack while he was repairing a tractor. In his initial complaint, filed March 29, 2001, Lagrone alleged that the jack was manufactured and distributed by Norco. Subsequently, La-grone learned that although Norco’s logo and name were on the jack, the jack had actually been manufactured by Fisher Products, a Georgia corporation. On May 9, 2001, Lagrone amended his complaint, naming Fisher Products as a defendant.
On July 16, 2001, Fisher Products filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12, Ala. R. Civ. P. The trial court scheduled a hearing on the motion to dismiss for August 1, 2001. On July 23, Lagrone filed a notice of deposition pursuant to Rule 30(b)(5) and (6), Ala. R. Civ. P., to depose a representative of Fisher Products on the jurisdictional issue only. On July 24, 2001, Lagrone filed a motion to continue the hearing on Fisher Products’ motion to dismiss and to permit discovery on the jurisdictional issue. Counsel for Fisher Products did not object to the continuance and notified the trial court that counsel agreed that additional discovery was necessary and that the hearing on the motion to dismiss should be continued. Counsel for Fisher Products advised Lagrone’s counsel that the hearing on the motion to dismiss was to be continued. However, on August 1, 2001, the trial court advised Lagrone’s counsel that they had 10 days in which to file an affidavit opposing Fisher Products’ motion to dismiss, after which time the trial court would rule on the motion. On August 3, 2001, counsel for Lagrone propounded interrogatories and requests for *622 production to Fisher Products concerning the jurisdictional issue; on that same day it filed a motion to shorten the time for Fisher Products to respond to the outstanding discovery requests.
On August 18, 2001, the trial court granted Fisher Products’ motion to dismiss for lack of personal jurisdiction. That same afternoon, counsel for Lagrone received a letter from counsel for Fisher Products stating that Fisher Products’ counsel was working on getting responses to Lagrone’s interrogatories and compiling the documents pertaining to Fisher Products’ sales and shipments, including 17 shipments by Fisher Products on behalf of Norco to customers in Alabama. When it issued the August 13 order dismissing Fisher Products for lack of personal jurisdiction, the trial court had not ruled on Lagrone’s motion to continue the August 1 hearing, its motion for relief or for a protective order, or its motion to shorten the time within which discovery must be completed. On August 21, 2001, Lagrone filed a motion to alter, amend, or vacate the judgment of dismissal. On August 29, 2001, the trial court issued an order permitting an additional 30 days from that date for discovery. During this time counsel for Lagrone deposed Wayne Bowers, one of the co.-owners of Fisher Products. On December 18, 2001, the trial court denied Lagrone’s motion to alter, amend, or vacate its order of August 13, 2001. La-grone then petitioned for a writ of mandamus.

Facts

Fisher Products is a Georgia corporation; its principal place of business is located in Hartwell, Georgia, near the South Carolina state line. Fisher Products has four employees, including its two co-owners. The company fabricates industrial equipment upon special orders to meet its customers’ specifications. Since 1982 or 1983 Fisher Products has fabricated jacks for Norco, the distributor of the jacks and a codefendant in this action. Fisher Products fabricates the jacks for Norco pursuant to orders placed by Norco and ships the jacks to the destinations Norco instructs it to ship them to. Occasionally, to save the time that would otherwise be consumed by shipment to Norco’s warehouse, Norco instructs Fisher Products to ship the jacks directly to a third party. According to Bowers, “When I ship it to [Norco’s] customer, Norco sends me the instructions and we bül it as shipped by Norco.” In those instances, Fisher Products sells the jacks “F.O.B.” (“free on board”), which means, according to Bowers, that once the shipment leaves Fisher Products’ shipping dock, the goods belong to Norco. On these occasions when Fisher Products ships a jack directly to a third party in Alabama, Fisher Products’ invoices describe Norco as the entity to which the product is sold and describes an Alabama addressee as the entity to which the product is to be shipped. The invoices issued by Fisher Products do not refer to shipping charges. The shipping documents issued by the carrier describe the Alabama addressee as the “consignee,” the shipper as “Fisher Products-Norco, Hart-well, Georgia,” and describes the freight as “pre-paid” or “third-party freight prepaid” with instructions to bill to Norco at its address in California.
We conclude from the deposition testimony of Bowers and from the exhibits attached to that deposition that Fisher Products sold the products F.O.B., Hart-well, Georgia, and that Fisher Products facilitated shipment to the Alabama addressees by coordinating with the common carrier so that the goods were shipped from Fisher Products’ Hartwell facility to the Alabama addressees, freight prepaid, with instructions to bill Norco in California for the shipping costs. From 1997 to 2000, the only years for which Fisher Products *623 produced records, Fisher Products made 17 shipments of jacks and other products to Alabama addresses at Norco’s instruction. Fisher Products’ revenues from the 17 shipments totaled $15,296.98.
More commonly, Fisher Products ships jacks fabricated for Norco directly to one of Norco’s warehouses, including one located in Atlanta, Georgia; Norco then distributes its products nationally.[1] Norco does not have a warehouse in Alabama. In response to Lagrone’s interrogatories, Norco stated that pursuant to an oral agreement it has with Fisher Products, Norco may sell items manufactured by Fisher Products in any state. In his deposition, Bowers testified that Fisher Products did not restrict Norcó from selling its products in any state. In 2000, Fisher Products fabricated 101 jacks for Norco; it shipped those jacks to various Norco warehouses. In 2000, Fisher Products had revenues of $79,765 from the sale of jacks to Norco. Norco ultimately delivered those jacks to customers in 21 states, including Alabama. The jack that allegedly caused Lagrone’s injury was one of those jacks Fisher Products sold to Norco and shipped to the Norco warehouse in Atlanta, Georgia. Norco sold and shipped the jack to Alabama Jack, which, in turn, sold the jack to Lagrone. Norco stated in its answers to Lagrone’s interrogatories that its only sales in Alabama were to Alabama Jack.
Fisher Products has never advertised in Alabama, has never directly solicited business in Alabama, and no Fisher Products employees have ever traveled to Alabama for business purposes.

Discussion

A writ of mandamus is an extraordinary form of relief available only when there is
“(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). See also Ex parte CUNA Mutual Ins. Soc’y, 822 So.2d 379, 382 (Ala.2001) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). The trial court’s order denying Lagrone’s motion to alter, amend, or vacate its order dismissing Lagrone’s claims against Fisher Products for lack of personal jurisdiction was interlocutory; thus, a writ of mandamus is the appropriate remedy. Ex parte Paul Maclean Land Servs., Inc., 613 So.2d 1284, 1286 (Ala.1993). “An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.” Elliott v. Van Kleef, 830 So.2d 726 (Ala.2002). See also Worthy v. Cyberworks Technologies, Inc., 835 So.2d 972 (Ala.2002).
“The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), citing Kulko v. Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Rule 4.2, Ala. R. Civ. P., Alabama’s long-arm rule, “extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions.” Elliott, 830 So.2d at 729; Sieber v. Campbell, 810 So.2d 641 (Ala.2001); Ex parte Pope Chevrolet, Inc., 555 So.2d 109, 110 *624 (Ala.1989). Rule 4.2(2)(A)-(H) describes examples of the types of contacts with this State that may provide a basis for in personam jurisdiction over a nonresident defendant. Subsection (I) then sets out a “catchall” provision intended to extend Alabama’s in personam jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution, even where subsections (A)-(H) do not apply. Elliott, 830 So.2d at 729. Rule 4.2 states, in pertinent part,
“(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person’s
“(A) transacting any business in this state;
[[Image here]]
“(D) causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
“(E) causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such other person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
[[Image here]]
“(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.”
Thus, because Rule 4.2 extends Alabama’s in personam jurisdiction to the outer limits of due process, the dispositive issue in this ease is whether the extension of Alabama’s in personam jurisdiction over Fisher Products is consistent with due process.
We have recently set out the analysis to be used in determining whether the exercise of Alabama’s in personam jurisdiction over the defendant satisfies the requirements of due process.
“The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient ‘minimum contacts’ with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant’s contacts is whether the contacts are such that the nonresident defendant ‘ “should reasonably anticipate being haled into court” ’ in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The sufficiency of a party’s contacts are assessed as follows:
“ ‘Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. *625 General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts with the forum state that are unrelated to the cause of action and that are both “continuous and systematic.” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant’s contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.’
“Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist ‘a clear, firm nexus between the acts of the defendant and the consequences complained of.’ Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).
[[Image here]]
“Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors — such as the burden on the defendant of litigating in the forum state and the forum state’s interest in adjudicating the dispute, Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174 — to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with ‘ “traditional notions of fair play and substantial justice.” ’ Brooks v. Inlow, 453 So.2d 349, 351 (Ala.1984), quoting International Shoe, 326 U.S. at 316, 66 S.Ct. 154. See also Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174.”
Elliott, 830 So.2d at 730-31; see also Worthy, 835 So.2d 972.
Thus, the first step in our analysis is to determine whether Fisher Products has the requisite “minimum contacts” with this State to support the exercise of in person-am jurisdiction. In World-Wide Volkswagen, the United States Supreme Court held that an automobile distributor and a retailer, both incorporated in New York and whose principal places of businesses were in New York, were not subject to Oklahoma’s in personam jurisdiction. In that case, a New York resident purchased a car from the retailer in New York, began driving the car to Arizona, and was injured in an accident in Oklahoma. There was no evidence indicating that either the distributor or the retailer shipped products into Oklahoma. Moreover, there was no evidence indicating that any vehicle sold by the distributor or the retailer — other than the one that caused the injury — had ever entered Oklahoma. The Court stated:
“[I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.”
*626 444 U.S. at 297-98, 100 S.Ct. 559 (emphasis added). Applying this test, the United States Supreme Court then stated:
“It is foreseeable that the purchasers of automobiles sold by [the distributor and retailer] may take them to Oklahoma. But the mere ‘unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.’ Hanson v. Denckla, [357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)].”
444 U.S. at 298. See also Ex parte Pope Chevrolet, Inc., 555 So.2d 109, 111 (Ala.1989).
In Asahi Metal Industry, Inc. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court was deeply divided as to what satisfies the World-Wide Volkswagen test of an “expectation that [the defendant’s products] will be purchased by consumers in the forum state.” In Asahi, a Japanese producer of tire valves sold its valves to a tire-tube manufacturer in Taiwan who later sold the tubes, equipped with Asahi’s valves, in California. Asahi was aware that the Taiwanese manufacturer sold the tubes throughout the world, including the United States. Affidavits indicated that Asahi knew its products would end up in California but that it did not contemplate that its sales to the Taiwanese manufacturer would subject it to lawsuits in California. Asahi, 480 U.S. at 107, 107 S.Ct. 1026. Justice O’Connor (joined by Chief Justice Rehnquist and Justices Powell and Scalia) favored a narrower interpretation of the “stream-of-commeree” doctrine. Justice O’Connor wrote: “[A] defendant’s awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.” Id. 480 U.S. at 112, 107 S.Ct. 1026.
Those four Justices, had they formed a majority, would have required that “additional conduct” indicating the defendant’s intent or purpose to serve the market before the defendant could be subjected to in personam jurisdiction in the forum State. Id. The four Justices concluded that Asahi did not have the requisite contacts to support in personam jurisdiction in California because there was no evidence of “an act of the defendant purposefully directed toward the forum State.” Asahi, 480 U.S. at 112, 107 S.Ct. 1026.
Justice Brennan (joined by Justices White, Marshall, and Blackmun) disagreed with this portion of the opinion. Justice Brennan wrote:
“The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.”
Asah% 480 U.S. at 117, 107 S.Ct. 1026. (Brennan, J., concurring in part and concurring in the judgment)(emphasis added). Those four Justices would have concluded that “Asahi’s regular and extensive sales of component parts to a manufacturer it knew was making regular sales of the final product in California” was sufficient to establish Asahi’s “minimum contacts” with California. Id. at 121, 107 S.Ct. 1026.
Justice Stevens (joined by Justices White and Blackmun) also wrote separately. Justice Stevens wrote:
“Whether or not [Asahi’s] conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components. In most circumstances I would be inclined to conclude that a regular *627 course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute ‘purposeful availment’ even though the item delivered to the forum State was a standard product marketed throughout the world.”
Asahi, 480 U.S. at 122, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment). From these opinions it appears that a majority of the Supreme Court would have concluded that Asahi did have the requisite contacts to support the assertion of California’s in personam jurisdiction. However, none of these views were endorsed by a majority of the Court, and the Court ultimately held that to allow California to exert in person-am jurisdiction over Asahi would be unreasonable, even if Asahi had had the requisite contacts with the state. Asahi, 480 U.S. at 116, 107 S.Ct. 1026. Thus, we follow the example of numerous federal and state courts and view Asahi’s treatment of the stream-of-commerce doctrine as instructive, but not binding, precedent. Ex parte Pope Chevrolet, Inc., 655 So.2d at 112; Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir.1993); Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 420 (5th Cir.1993); Andersen v. Sportmarb, Inc., 57 F.Supp.2d 651, 658-59 (N.D.Ind.1999).
A nonresident defendant may be subjected to Alabama’s general in person-am jurisdiction if its contacts with this State, although unrelated to the cause of action, are “continuous and systematic.” Helicopteros Nacionales de Colombia, S.A v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Worthy, 835 So.2d 972; Elliott, 830 So.2d 732-33. Between 1997 and 2000, the only years for which Fisher Products has produced records, Fisher Products made 17 shipments of its products, totaling $15,296.98, to Alabama customers at Norco’s instruction.[2] Fisher Products sold the products F.O.B., Hartwell, Georgia, and facilitated shipment to the Alabama addressees by coordinating with the common carrier so that the goods were shipped from Fisher Products’ Hart-well facility to the Alabama addressees, freight prepaid, with instructions to bill Norco in California for the shipping costs.
The mere fact that Fisher Products delivered its products “F.O.B. Hartwell, Georgia,” is not dispositive. The United States Court of Appeals for the Eleventh Circuit stated in Vermeulen v. Renault, U.S.A., Inc., 985 F.2d at 1548:
“[W]e note that the fact that title to the Renault vehicles passed to AMSC in France rather than in the United States in no way determines the degree of contacts between the United States and RNUR. ‘ “If International Shoe stands for anything ..., it is that a truly interstate ... business may not shield itself from suit by a careful but formalistic structuring of its business decisions.” ’ ”
See also Renner v. Lanard Toys Ltd., 33 F.3d 277, 282 (3d Cir.1994), and Starbrite Distrib., Inc. v. Excelda Mfg. Co., 454 Mich. 302, 307, 562 N.W.2d 640, 642 (1997).
Fisher Products conceded that it knew that the products included in the 17 transactions were being shipped to customers in Alabama. Fisher Products placed its products into the stream of commerce, with not only the “expectation,” but with the actual knowledge that the products would be purchased by consumers in this State. See World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559. Thus, even assuming that Fisher Products was unaware that the other products it sold to *628 Norco and shipped to Norco’s warehouses were to be marketed by Norco in Alabama, Fisher Products knew that those 17 shipments were being sold to Alabama customers. Thus, in light of those shipments, Fisher Products “ ‘should reasonably [have] anticipate^] being haled into court [in Alabama].’ ” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp., 444 U.S. at 295, 100 S.Ct. 559. The acts of Fisher Products are sufficiently “continuous and systematic” to establish Alabama’s general in personam jurisdiction. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 9, 104 S.Ct. 1868; Elliott, 830 So.2d at 730. Where general in personam jurisdiction exists, the absence of “a clear, firm nexus between the acts of the defendant and the consequences complained of,” Duke v. Young, 496 So.2d 37, 39 (Ala.1986), so as to support specific in personam jurisdiction is immaterial. See Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868 (finding that the claims did not “arise out of’ the contacts with the forum state, but continuing to consider whether the contacts nevertheless supported general jurisdiction). Because we hold that an Alabama court can, consistent with due process, assert general in personam jurisdiction over Fisher Products, it is inconsequential that the jack made the basis of this action was not included in the 17 shipments made by Fisher Products directly to Alabama over a period of three years.
Our analysis does not end with the determination that Fisher Products has the requisite “minimum contacts” with this State to permit Alabama courts to subject it to in personam jurisdiction. We must also consider whether such jurisdiction is consistent with “traditional notions of fair play and substantial justice.” Ex parte United Bhd. of Carpenters & Joiners of America, AFL-CIO, 688 So.2d 246, 252 (Ala.1997); Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174; Brooks v. Inlow, 453 So.2d 349, 351 (Ala.1984); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). For a nonresident defendant who has purposefully directed his activities at Alabama residents to defeat personal jurisdiction, “he must present a compelling case that the existence of some other considerations would render jurisdiction unreasonable.” Burger King, 471 U.S. at 477, 105 S.Ct. 2174. Fisher Products contends that it would be unduly burdensome to require it to come from Georgia to Birmingham to defend an action because it has only four employees and its principal office is located near the South Carolina border. Fisher’s location at Hartwell, Georgia, makes attending a trial in many counties in the southernmost portion of its home state of Georgia significantly more burdensome than attending a trial in Birmingham, Alabama. Mileage between geographic points is “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Rule 201(b)(2), Ala. R. Evid. After weighing the burden on Fisher Products of defending this action in Alabama against Lagrone’s interest in obtaining convenient and effective relief and the judicial system’s interest in the efficient resolution of controversies, we conclude that the exercise of in person-am jurisdiction in this case is reasonable. Thus, because it would not offend due process, Fisher Products may be subjected to Alabama’s in personam jurisdiction under Rule 4.2, Ala. R. Civ. P.
Because Fisher Products is subject to Alabama’s in personam jurisdiction, La-grone has a “clear legal right” to have the trial court vacate its order of August 13, 2001, dismissing the action against Fisher Products for lack of personal jurisdiction, and we direct the trial court to do so. We grant the petition and issue the writ.
*629 PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.

. Fisher Products has also shipped items to Norco warehouses in California, Indiana, and Texas.

. The available records show that Fisher Products sent four shipments to Alabama in 1997 totaling $5,094.50, seven shipments in 1998 totaling $4,890.48, four shipments in 1999 totaling $3,536, and two shipments in 2000 totaling $1,776.