830 So.2d 726 (2002)
Cary C. ELLIOTT
v.
John D. VAN KLEEF and Bullock & Van Kleef.
1001395.
Supreme Court of Alabama.
April 12, 2002.
*727 Edward B. Parker II, Montgomery, for appellant.
Robert P. MacKenzie III and J. Matt Stephens of Starnes & Atchison, L.L.P., Birmingham, for appellees.

On Application for Rehearing
LYONS, Justice.
The opinion of January 11, 2002, is withdrawn, and the following is substituted therefor.
Cary C. Elliott filed an action under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975, in the Jefferson Circuit Court against John F. Kizer, Jr.; John F. Kizer, L.L.C.; and John D. Van Kleef and the law firm of Bullock & Van Kleef (hereinafter collectively referred to as "the Van Kleef defendants"). Elliott alleged that the defendants, all lawyers and law firms, failed to properly represent him in a personal-injury action filed in Arkansas, resulting in that action's being dismissed with prejudice. The trial court granted the Van Kleef defendants' motion to dismiss for lack of personal jurisdiction. The trial court certified this order as final pursuant to Rule 54(b), Ala. R. Civ. P. Elliott appeals. We affirm.

Background
Elliott claims that he was injured in 1991 when he was exposed to hazardous chemicals while he was working in Arkansas. The defendants filed a personal-injury action on Elliott's behalf in the Circuit Court of Mississippi County, Arkansas, in 1993. This action was voluntarily dismissed, without prejudice, pursuant to a motion for nonsuit filed by the defendants in 1997. The defendants then filed a second action, arising from the same injury, on March 10, 1998. This second action was involuntarily dismissed with prejudice, on November 30, 1998, because the Van Kleef defendants allegedly failed to serve a defendant in that action within the time *728 allowed by the Arkansas Rules of Civil Procedure.
After Elliott brought this action against Kizer, John Kizer, L.L.C., and the Van Kleef defendants, the Van Kleef defendants moved to dismiss pursuant to Rule 12(b)(2), Ala. R. Civ. P., for lack of in personam jurisdiction. The trial court permitted discovery, but limited discovery to the issue whether the court had in personam jurisdiction over the Van Kleef defendants. After this discovery was completed, the trial court accepted evidence and briefs and held a hearing regarding its in personam jurisdiction over the Van Kleef defendants. The trial court then granted the Van Kleef defendants' motion to dismiss for lack of in personam jurisdiction.

Facts
Van Kleef is an attorney licensed to practice law in Arkansas and Texas. Van Kleef is not licensed to practice law in Alabama and has never applied for a license to practice law in this state. Van Kleef resides in Arkansas and has never traveled to Alabama. Van Kleef owns no property in Alabama and owns no interest in any business that operates in Alabama.
The law firm of Bullock & Van Kleef is a partnership formed in Arkansas for the purpose of practicing law. Bullock & Van Kleef's principal place of business is Russellville, Arkansas. Bullock & Van Kleef owns no property in Alabama, and it owns no interest in any business that operates in Alabama. Bullock & Van Kleef maintains a listing in the Martindale-Hubbell Law Directory.
Elliott, a resident of Alabama, retained Kizer, an attorney licensed to practice law in Alabama and residing in Jefferson County, to represent him in a personalinjury action brought in Arkansas. Kizer, who was not licensed to practice law in Arkansas, contacted Bullock & Van Kleef by telephone and requested that that firm serve as local counsel in Arkansas regarding the personal-injury action. Kizer had learned of Van Kleef and the law firm of Bullock & Van Kleef through the firm's listing in the Martindale-Hubbell Law Directory. Bunny Bullock, Van Kleef's law partner, chose not to be involved in Elliott's case. Both Kizer and Van Kleef understood that Van Kleef would serve only as local counsel in Arkansas, and neither Kizer nor Van Kleef expected that Van Kleef would travel to Alabama in conjunction with Elliott's case. Van Kleef sent Kizer a letter in 1993, following their telephone conversation, stating that he would serve as local counsel.
Neither Kizer nor Van Kleef ever explained to Elliott that Van Kleef was serving only as local counsel in Arkansas and that in that role he would not be expected to travel to Alabama. From 1993 to 1998, while Elliott's underlying personal-injury actions were pending, Elliott and Van Kleef communicated on two occasions. On August 31, 1993, Van Kleef and Kizer met with Elliott in West Memphis, Arkansas, before Elliott's deposition was taken. This was the only time Elliott and Van Kleef met. When Elliott met Van Kleef in Arkansas, Kizer told Elliott, in Van Kleef's presence, that he had employed Van Kleef to represent Elliott along with Kizer. Kizer explained that employing Van Kleef was necessary because Kizer was not licensed to practice law in Arkansas. Kizer also stated that Elliott was Kizer's client as well as the Van Kleef defendants' client. Van Kleef did not disagree with or explain any of the statements Kizer made at the meeting. Elliott testified that he believed that Van Kleef would travel to Alabama to meet witnesses, to conduct discovery, and to prepare for trial.
The second communication between Elliott and Van Kleef occurred in 1998. Before *729 Elliott's Arkansas personal-injury action was refiled in 1998, Kizer informed Elliott that he would no longer represent him. Elliott telephoned Van Kleef in Arkansas to tell Van Kleef that he expected to clear up the misunderstanding with Kizer and that he still considered the Van Kleef defendants to be his legal counsel in Arkansas. Van Kleef did not explain that he and his firm were no longer representing Elliott in Arkansas or that their role was merely as local counsel. Kizer later resumed representing Elliott in the personal-injury action.
Van Kleef never telephoned Elliott or sent him any correspondence. Van Kleef sent six letters to Kizer during the period from 1993 to 1998. Van Kleef and Kizer also exchanged some fax transmissions and telephone calls during that same period related to Elliott's personal-injury action. Van Kleef also made telephone calls and sent fax transmissions to Alabama between 1993 and 1998 that were unrelated to Elliott's lawsuit.[1] Kizer sent Van Kleef several motions, pleadings, and other documents relating to Elliott's personal-injury action. Van Kleef signed a petition to admit Kizer pro hac vice in Arkansas. Van Kleef also performed some legal research for Kizer related to Elliott's case and mailed the results of this research to Kizer in Alabama.

Standard of Review
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction. Greene v. Connelly, 628 So.2d 346, 351-52 (Ala.1993); Williams v. Skysite Communications Co., 781 So.2d 241, 245 (Ala.Civ.App.2000). Thus, even if, as Elliott claims, the trial court applied an incorrect standard when it ruled on the Van Kleef defendants' motion to dismiss, that error would not be a basis for reversing the trial court's order of dismissal if we determine that the dismissal was proper.

Discussion
Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions. Sieber v. Campbell, 810 So.2d 641 (Ala.2001). Rule 4.2(a)(2), Ala. R. Civ. P., Alabama's longarm rule, sets out situations in which a nonresident defendant's contacts with this State are considered sufficient to subject the nonresident defendant to personal jurisdiction in an Alabama court. Subsection (I) of Rule 4.2(a)(2) contains a "catch-all" provision, which permits jurisdiction over a nonresident defendant whose contacts with this State do not fall into one of the situations listed in Rule 4.2(a)(2)(A)-(H). The parts of Rule 4.2(a)(2) that Elliott contends subject the Van Kleef defendants to in personam jurisdiction in Alabama read as follows:
"(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
"....
"(D) causing tortious injury or damage in this state by an act or *730 omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
"....
"(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
Because we find that subjecting the Van Kleef defendants to in personam jurisdiction in an Alabama court would offend due process, as shown below, we pretermit consideration of whether in personam jurisdiction is appropriate under Rule 4.2(a)(2)(A) and (D).
This Court has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution. See Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala.1983), and DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447, 449 (Ala.1977). See also Rule 4.2, Ala. R. Civ. P., Committee Comments on 1977 Complete Revision following Rule 4.4, under the heading "ARCP 4.2." ("Subparagraph (I) was included by the Committee to insure that a basis of jurisdiction was included in Alabama procedure that was coextensive with the scope of the federal due process clause....").
The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient "minimum contacts" with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant "`should reasonably anticipate being haled into court'" in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The sufficiency of a party's contacts are assessed as follows:
"Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both `continuous and systematic.' Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id."

Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring *731 in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist "a clear, firm nexus between the acts of the defendant and the consequences complained of." Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).
In the case of either general in personam jurisdiction or specific in personam jurisdiction, "[t]he `substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "`the unilateral activity of another person or a third person.'" Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
Only after such minimum contacts have been established does a court then consider those contacts in the light of other factorssuch as the burden on the defendant of litigating in the forum state and the forum state's interest in adjudicating the dispute, Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "`traditional notions of fair play and substantial justice.'" Brooks v. Inlow, 453 So.2d 349, 351 (Ala.1984), quoting International Shoe, 326 U.S. at 316, 66 S.Ct. 154. See also Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174.
Van Kleef's connections with Alabama do not suffice to meet the requirements for either specific or general in personam jurisdiction under any of these subsections of Rule 4.2. First, the telephone calls, fax transmissions, and letters from Kizer and Elliott to Van Kleef are irrelevant to whether personal jurisdiction over Van Kleef exists, because these calls and faxes were "the unilateral activity of another person." Burger King, 471 U.S. at 475, 105 S.Ct. 2174. Van Kleef did not purposefully avail himself of jurisdiction in this State merely by receiving telephone calls and fax transmissions or by opening mail sent from Alabama. The few telephone calls Van Kleef made to Alabama on behalf of other clients, after his relationship with Elliott was terminated, are also irrelevant, because "[o]nly contacts occurring prior to the event causing the litigation may be considered." Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir.1990).
In support of his argument that the Alabama court had in personam jurisdiction over the Van Kleef defendants, Elliott stresses his belief that Van Kleef would travel to Alabama to represent him. In Van Kleef's letter to Kizer, which memorialized their initial telephone conversation, Van Kleef stated that he would act as "local counsel" in Arkansas; Elliott does not deny that this was both Kizer's and Van Kleef's understanding. In any event, Elliott's mental impression that Van Kleef would travel to Alabama on his behalf is irrelevant to the question whether an Alabama court can exercise personal jurisdiction over Van Kleef.
Nor can Bullock & Van Kleef's listing in the Martindale-Hubbell Law Directory extend Alabama's in personam jurisdiction over the Van Kleef defendants because this listing is not purposefully directed at Alabama. Asahi, 480 U.S. at 112, 107 S.Ct. 1026. In Charlie Fowler Evangelistic Ass'n, Inc. v. Cessna Aircraft Co., 911 F.2d 1564, 1566 (1990), the United States *732 Court of Appeals for the Eleventh Circuit held that a Mississippi company that advertised in the Southeastern and Gulf States edition of "The Aviation Telephone Directory" did not purposefully direct its activities at Florida residents. Similarly, in Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420 (1986), the Eleventh Circuit held:
"[A]n advertisement in an Alabama newspaper offering employment opportunities to qualified applicants ... does not satisfy the principles espoused by the Supreme Court or the requisites of due process. Such activities do not fall within the realm of purposeful availment of the benefits and protections of Alabama laws."
See also Federated Rural Elec. Ins. Co. v. Kootenai Elec. Cooperative, 17 F.3d 1302, 1305 (10th Cir.1994)("evidence of mere placement of advertisements in nationally distributed paper or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser"). The Martindale-Hubbell directory is distributed nationally; a subscriber cannot be said to have purposefully directed his listing specifically at one state. If a law firm's decision to list its services in this directory was sufficient to create in personam jurisdiction, then every attorney listed in this directory would be subject to nationwide service of process. See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 588 (3d Cir.1982), Myers v. Emery, 697 S.W.2d 26, 28 (Tex.App.1985).
This leaves only Van Kleef's telephone calls, fax transmissions, and letters. The texts of Van Kleef's telephone calls and faxes to Alabama do not appear in the record. Nor is there any evidence indicating that all of the telephone calls or faxes even related to Elliott's case. Kizer and the Van Kleef defendants had had contacts regarding another case before their involvement in Elliott's case. Although one of Van Kleef's letters deals with extricating Kizer from the consequences of Kizer's alleged failure to have a defendant in Elliott's action served, none of the letters support a theory of Van Kleef's complicity in the conduct of which Elliott complains, i.e., Kizer's alleged failure to serve a defendant when Kizer, acting independently and without Van Kleef's assistance, drafted and filed the complaint in Arkansas in Elliott's second personal-injury action. Van Kleef offered uncontroverted testimony that he did not know Kizer had filed the complaint in the 1998 action until he received a copy of the motion to dismiss that action and that Kizer did not seek his assistance with the 1998 action until after the 120-day period for service had run. There is no allegation that Van Kleef knew that Kizer did not have the defendant served when Kizer filed the complaint. Nor is there any allegation that the alleged malpractice arose in the context of Van Kleef's failure to cure the faulty service once the defendant in the underlying Arkansas action filed his motion to dismiss. Thus, we conclude that Van Kleef's communications to Kizer do not provide "a clear, firm nexus between the acts of the defendant and the consequences complained of." Duke, 496 So.2d at 39. See also Ex parte Kamilewicz, 700 So.2d at 345 n. 2. Thus, Van Kleef's few communications with Kizer will not provide a basis for specific in personam jurisdiction.
Furthermore, Van Kleef's six letters and few telephone calls to Kizer over a five-year period do not provide the "continuous and systematic" contacts necessary to establish Alabama's general in personam jurisdiction over the Van Kleef defendants. Helicopteros Nacionales, 466 U.S. at 414 n. 9, 104 S.Ct. 1868. Even were we also to consider the Van Kleef defendants' listing *733 in the Martindale-Hubbell Law Directory and their few communications with Alabama state officials on behalf of other clients after Elliott's claim arose, the Van Kleef defendants' contacts are not the "continuous and systematic" contacts necessary to subject them to Alabama's general in personam jurisdiction.
Because the exercise of either general or specific in personam jurisdiction over the Van Kleef defendants would violate the Due Process Clause, Rule 4.2, Ala. R. Civ. P., does not permit the extension of Alabama's in personam jurisdiction over the Van Kleef defendants. The trial court correctly granted the Van Kleef defendants' motion to dismiss.
APPLICATION OVERRULED; OPINION OF JANUARY 11, 2002, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and concurs in the result.
JOHNSTONE, Justice (concurring in part and concurring in the result).
I concur in overruling the application for rehearing, and, but for two exceptions, I concur in the main opinion. Neither exception would change the result.
My first exception is that I disagree with the holding in the main opinion that "the telephone calls, fax transmissions, and letters from Kizer and Elliott to Van Kleef... were `the unilateral activity of another person.'" 830 So.2d at 731. Communications from one party to another in an existing and ongoing relationship would not seem to be unilateral any more than the statements made by one party to another in an ongoing conversation would be unilateral. These particular calls, faxes, and letters, however, are not enough to make a difference on the issue of in personam jurisdiction.
My second exception is that I do not agree with the holding in the main opinion that the Martindale-Hubbell directory "listing is not purposefully directed at Alabama." 830 So.2d at 731. I also do not endorse the federal cases cited by the main opinion in support of this holding. The Martindale-Hubbell directory listing is purposefully directed at Alabama as well as 49 other states, some territories, and the District of Columbia. If a man punches the respective noses of 60 other people in a room, his punching 59 of them does not detract from the purposefulness or the directness of his punching the sixtieth. This Martindale-Hubbell listing, however, is too innocuous and too minor to make a difference on the issue of in personam jurisdiction.
NOTES
[1] The other telephone calls and fax transmissions by the Van Kleef defendants to Alabama in connection with matters unrelated to Elliott's personal-injury actions included two telephone calls to either the Alabama Department of Finance or the Alabama Secretary of State's office in 2000, requesting paperwork on behalf of a client. The Van Kleef defendants also filed an application for "Certificate of Authority of a Foreign Corporation" with the Alabama Secretary of State, and in 2000 they filed an action in Arkansas against an Alabama defendant.