Hiller Investments Incorporated ("Hiller") appeals the trial court's order dismissing Hiller's breach-of-contract action against Insultech Group, Inc., for lack of in personam
jurisdiction. For the reasons stated below, we reverse that judgment for Insultech.
 I. Facts and Procedural History
Insultech, a Florida corporation headquartered in Plant City, Florida, contracted in February 2004 with Titan Cruise Lines to renovate a ship named the Ocean Jewel ("the project"). Before it entered into that contract, Insultech had sent Hiller Systems, Inc. ("Hiller Systems"), a wholly owned subsidiary of Hiller, an e-mail message requesting a quote for an arrangement under which Hiller Systems would subcontract to install deck covering on the ship ("the subcontract arrangement"). Both Hiller Systems and Hiller are Alabama corporations that are based in Mobile.
Insultech awarded the deck-covering work to Hiller Systems. Hiller Systems installed the deck covering during 2004 while the ship was in port in locations outside Alabama. During the first half of 2004, representatives of Insultech and Hiller Systems exchanged 14 written communications (by e-mail, facsimile, or correspondence) concerning the subcontract arrangement and the scope of the work. The representatives of Hiller Systems who received or sent these 14 communications were in Alabama when the communications were transmitted. None of the Insultech representatives who received or transmitted those 14 communications was *Page 1113 
in Alabama when the communications were sent. The subcontract arrangement was not documented by a written contract simultaneously signed by the parties, but by purchase-order and invoice forms (collectively "the purchase order"). The purchase order did not contain a choice-of-law provision or a venue-selection clause for resolution of disputes arising under the subcontract arrangement.
St. Petersburg, Florida, was the home port for the OceanJewel. Hiller Systems performed all of the work under the sub-contract arrangement outside Alabama.[1] During the latter part of 2004, a dispute arose between Insultech and Hiller Systems concerning the total amount Insultech owed for the deck-covering work. Nineteen written communications (14 of which were e-mails) were transmitted between representatives of Hiller Systems and Insultech from October 1 through December 15, 2004; most of these 19 communications concerned the dispute. The representatives of Hiller Systems who received or sent these 19 communications were in Alabama when the communications were transmitted. Each Insultech representative who received or transmitted these communications was outside Alabama when they were sent.
After negotiations to settle the dispute stalled, Daniel Romanchuk, the chief operating officer of Hiller, intervened in December 2004 to attempt to break that impasse. Romanchuk participated in five telephone conversations with Bob Doyle (Insultech's Florida-based representative for the project) between December 15, 2004, and late January 2005 concerning a possible settlement. Romanchuk was based in Mobile at the time of these telephone conversations. According to Hiller, Romanchuk and Doyle agreed in late January 2005 that the total value of Hiller Systems' work under the subcontract arrangement was approximately $590,000. At that time, Doyle advised Romanchuk that Insultech could not make a lump-sum payment of the then outstanding balance of approximately $221,000 owed for Hiller Systems' work, and inquired whether Hiller would agree to an installment arrangement to retire that debt. Following additional exchanges between Romanchuk and Doyle by telephone and e-mail, Romanchuk sent Insultech a promissory note (and an accompanying letter) dated February 8, 2005, indicating that at four designated times during 2005 Insultech would pay Hiller equal installments of $56,054.25, which included interest of 5.25% per annum ("the note"). The note also provided that, by executing that instrument, Insultech was
 "acknowledg[ing] that it was doing business in Alabama, . . . subjecting itself to the jurisdiction of the Courts of Alabama, . . . agree[ing] that resolution of any matter arising out of this Promissory Note shall be litigated in the Circuit Court in the County of Mobile, Alabama and agree[ing] that this will be the proper jurisdiction and venue for said issues to be resolved."
Hiller contends that the purpose of the note was to memorialize the financial terms of the settlement of the dispute. According to Insultech, Romanchuk's transmittal of the note to Doyle in early February 2005 was a counteroffer; Insultech never executed the note. Hiller asserts that its failure to secure Insultech's signature on the note was an administrative oversight. Doyle was not in Alabama at any time during the settlement negotiations *Page 1114 
and communications with Romanchuk.
During 2005 Insultech wired to Hiller's account in Alabama the first three of the four installment payments of $56,054.25 contemplated in the note. That note stated that the final installment was payable on December 1, 2005. Insultech did not make the December 1 payment, and on December 21, 2005, Hiller sued Insultech in the Mobile Circuit Court to recover $56,054.25 (plus prejudgment interest, attorney fees, and costs), alleging breach of contract arising from Insultech's breach of the purported settlement agreement.
On February 6, 2006, Insultech appeared in the action to contest personal jurisdiction. Insultech filed a motion to dismiss pursuant to Rule 12(b)(2), Ala. R. Civ. P., supported by an affidavit; the affidavit reflected the following facts:
 1. Hiller Systems performed all the work under the subcontract arrangement outside Alabama.
 2. No representative of Insultech traveled to Alabama or met with representatives of Hiller or Hiller Systems in Alabama to discuss or negotiate the subcontract, the progress of the deck-covering work, or the settlement of the dispute.
 3. All communications relating to the subcontract arrangement or the dispute that were generated by, or directed to, Insultech's representatives were initiated or received by those representatives at locations outside Alabama.
 4. The purchase order did not contain a provision selecting Alabama as the venue for the resolution of disputes arising under the subcontract arrangement.
 5. Insultech did not sign the note, which named Alabama as the venue for any litigation "arising out of the note, or otherwise consent to the jurisdiction of the courts of Alabama.
 6. Insultech was not qualified to do business in Alabama. Except for a short-term project in 2000, Insultech had not performed services in Alabama before its dealings with Hiller and Hiller Systems.
 7. Insultech did not own or lease property, have employees, advertise, pay taxes, maintain bank accounts, have any ongoing relationships with Alabama-based firms, or otherwise conduct business in Alabama.
Hiller opposed Insultech's motion to dismiss and submitted multiple affidavits detailing the dealings between the parties from December 2003 through December 2005. After considering the briefs and argument of counsel, the trial court granted Insultech's Rule 12(b)(2) motion on March 15, 2006, and dismissed Hiller's action for lack of personal jurisdiction.[2]
Hiller appealed.
 II. Standard of Review
A de novo standard applies when an appellate court reviews a trial court's judgment on a motion to dismiss for lack of personal jurisdiction. Elliott v. Van Kleef,830 So.2d 726, 729 (Ala. 2002). Moreover, the plaintiff carries the burden of proving the trial court's personal jurisdiction over the defendant. Ex parte Covington Pike Dodge, Inc.,904 So.2d 226, 229 (Ala. 2004).
 III. Analysis
Rule 4.2(b), Ala. R. Civ. P., Alabama's "long-arm" provision, governs whether an Alabama court may exercise personal jurisdiction over an out-of-state *Page 1115 
defendant. In pertinent part, that rule states:
 "(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . ."
This rule extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions. When applying Rule 4.2(b), this Court has interpreted the due process guaranteed under the AlabamaConstitution as coextensive with that guaranteed under the United States Constitution. See Elliott,830 So.2d at 730.
The analytical framework applicable here was thoroughly described in Elliott:
 "The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient `minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant `"should reasonably anticipate being haled into court"' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The sufficiency of a party's contacts are assessed as follows:
 "`Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp., 471 U.S. at 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.'
 "Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala. 1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist `a clear, firm nexus between the acts of the defendant and the consequences complained of.' Duke v. Young, 496 So.2d 37, 39
(Ala. 1986). . . .
 "In the case of either general in personam
jurisdiction or specific in personam
jurisdiction, `[t]he "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.' Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of `"the unilateral activity of another person or a third person."' Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, *Page 1116 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
 "Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors — such as the burden on the defendant of litigating in the forum state and the forum state's interest in adjudicating the dispute, Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174 — to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with `"traditional notions of fair play and substantial justice."' Brooks v. Mow, 453 So.2d 349, 351 (Ala. 1984), quoting International Shoe, 326 U.S. at 316, 66 S.Ct. 154."
830 So.2d at 730-31.
The threshold question presented here is whether Insultech has minimum contacts with Alabama so as to allow Insultech to be sued in Alabama by Hiller. Questions of personal jurisdiction are necessarily case specific. There is no evidence indicating that Insultech engaged in such "continuous and systematic" activities in Alabama so as to confer general inpersonam jurisdiction. Elliott, 830 So.2d at 730. Not considering the subcontract arrangement or the purported settlement agreement, Insultech did not, except for one short-term project completed in 2000, perform services, advertise, retain employees, or otherwise conduct business in Alabama at the time of, or before, its dispute with Hiller.
We thus consider specific in personam jurisdiction and examine whether Insultech's contacts with Alabama relating to Hiller's breach-of-contract claim are of such nature that Insultech could have reasonably anticipated being sued in Alabama. The following links exist between Insultech's activities, the State of Alabama, and Hiller's breach-of-contract action:
 1. In December 2003, Insultech sent an e-mail to the offices of Hiller Systems in Mobile requesting a quote for deck-covering work on the Ocean Jewel.
This contact initiated negotiations that resulted in Insultech's selection of Hiller Systems to perform the work under a sub-contract arrangement.
 2. During 2004, representatives of Hiller Systems and Insultech exchanged 33 written communications (i.e., e-mails, facsimiles, and correspondence) concerning the subcontract arrangement and the dispute. When those communications occurred, the affected representatives of Hiller Systems were in Alabama and Insultech's representatives were outside this State.
 3. During 2004, Insultech made progress payments for the subcontract work to Hiller Systems in Alabama.
 4. During the settlement negotiations, Romanchuk, an Alabama-based representative for Hiller, had five telephone conversations and sent documents to Doyle (Insultech's Florida-based representative) concerning the dispute.
 5. After the parties agreed that Insultech owed approximately $221,000 for the subcontract work, Doyle advised Romanchuk early in 2005 that Insultech could not pay that balance in one lump sum and requested that Hiller accept installment payments and finance that debt. Romanchuk was in Alabama and Doyle was outside Alabama when those settlement discussions occurred. The agreement that forms the basis of Hiller's breach-of-contract claim resulted from these negotiations.
 6. During 2005, Insultech wired three installment payments of $56,054.25 each to Hiller in Alabama.
This Court has interpreted the reach of Alabama's long-arm rule in two cases that involved facts similar to those presented here. In both Steel Processors, Inc. v. Sue's Pumps,Inc., 622 So.2d 910 (Ala. *Page 1117 
1993), and Ex parte Phase III Construction, Inc.,723 So.2d 1263 (Ala. 1998), Alabama-based companies that supplied goods or services outside Alabama sued out-of-state defendants in Alabama to recover compensation for their work.
In Steel Processors, the Alabama-based claimant had supplied materials and labor to repair a barge in Florida. In that case, the contacts between the nonresident defendant and Alabama were (a) a series of interstate telephone calls concerning the barge project, and (b) partial payments by the defendant into Alabama for the work. 622 So.2d at 914. Based on those facts, the Court in Steel Processors held that the defendant's contacts with Alabama were insufficient for an Alabama court to exercise in personam jurisdiction over the out-of-state defendant. 622 So.2d at 914.
The Steel Processors Court applied several principles that are pertinent here. That Court noted that "[f]ederal courts have held that, in the absence of other factors tending to support jurisdiction, `a mere one-time purchaser of goods from a seller in a forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state.'" 622 So.2d at 913 (quoting Borg-Warner AcceptanceCorp. v. Lovett Tharpe, Inc., 786 F.2d 1055, 1059
(11th Cir. 1986), citing Owen of Georgia, Inc. v.Blitman, 462 F.2d 603 (5th Cir. 1972)). Addressing the interstate communications and payments by an out-of-state defendant into Alabama, the Steel Processors Court observed that "`[t]he use of interstate facilities (telephone, the mail), [and] the making of payments in the forum state . . . are secondary or ancillary factors and cannot alone
provide the "minimum contacts" required by due process.'"Id. (quoting Scullin Steel Co. v. National Ry.Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982)). Moreover, the claimant in Steel Processors contended that the out-of-state defendant should have foreseen that it would be sued in Alabama because it entered into a contract with knowledge that the subject goods would be fabricated in Alabama. In rejecting that argument, the Steel Processors Court reasoned that "[t]he purchase of goods fabricated in a forum state, and of services provided by a resident corporation of a forum state, does not alone provide the requisite `minimum contacts' for exercise of personal jurisdiction within the bounds of due process." 622 So.2d at 913-14.[3]
In Ex parte Phase III Construction, Inc., Collins Signs, Inc., an Alabama-based manufacturer, sued Phase III Construction, Inc., a Virginia firm, in Alabama based on Phase Ill's failure to pay for signs that Collins had manufactured in Alabama and installed in Virginia. Phase III contended that it should not be required to litigate with Collins in Alabama because of the alleged insufficiency of its contacts with this State. As in Steel Processors, the out-of-state defendant in Phase III had engaged in a series of inter-state communications (by telephone, facsimile, and correspondence) with representatives of Collins concerning the disputed project and had sent a partial payment to Collins for the work. 723 So.2d at 1265. Additionally, the disputed transaction in Phase III evolved after Collins received an unsolicited request from Phase III for Collins to supply the signs. Id. Relying on the solicitation by Phase III made to a company in Alabama, this Court held that *Page 1118 
it was "fair and reasonable to invoke . . . jurisdiction [over Phase III in Alabama]" because "Phase III initiated its contacts with this State solely for its own profit, [thereby] availing itself of the privilege of conducting business here."723 So.2d at 1265.
Justice Lyons concurred in the result in Phase III and authored a special writing, which two other Justices joined. He reasoned that, although Phase III had not engaged in such "continuous and systematic" activities that are attendant to general in personam jurisdiction, minimum contacts existed between the activities of Phase III, Alabama, and Collins's cause of action to confer specific inpersonam jurisdiction. 723 So.2d at 1266. Justice Lyons noted the holdings by the Steel Processor's Court but distinguished Steel Processors because in PhaseIII there were "`other factors tending to support jurisdiction'" — notably Phase Ill's unsolicited contact of Collins to install the signs. 723 So.2d at 1266. His special writing cited with approval the United States Supreme Court's holding in McGee v. International Life Insurance Co.,355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), that "a defendant's one-time solicitation of business in the forum state is sufficient grounds for the exercise of personal jurisdiction over the defendant." 723 So.2d at 1266.
Insultech relies extensively on Steel Processors.
Hiller argues that this Court's decision in Phase III
should control. An important difference between PhaseIII and Steel Processors is that in PhaseIII the out-of-state defendant initiated the contact with the forum state, whereas the out-of-state defendant in SteelProcessors did not. Steel Processors,622 So.2d at 914.
The facts here are closely aligned with those of PhaseIII. As in Phase III, Insultech initiated the contacts with the forum state on which Hiller's cause of action is based. Insultech did so on two occasions. The first occurred in December 2003 when, in an e-mail message from Insultech to Hiller Systems in Mobile, Insultech requested a quote from Hiller Systems for the deck-covering work. Subsequently, in early 2005, Doyle (Insultech's representative) requested that Hiller finance the balance then owed for the deck-covering work performed by Hiller Systems.
Insultech makes two arguments to attempt to distinguishPhase III. First, the Alabama-based claimants in bothPhase III and Steel Processors manufactured goods in Alabama that were used in other states. Insultech attempts to distinguish Phase III on the basis that Hiller did not present evidence indicating that the materials installed on the project were manufactured in Alabama. Second, Insultech argues that the initiation of the transaction through a contact by the defendant with the forum state is not a controlling consideration.[4] Insultech argues that, if this Court considers all factors (including the fact that the work under the subcontract arrangement was performed outside Alabama), Insultech's contacts with Alabama are insufficient to confer jurisdiction.
We do not decide this case on the basis of a single factor, whether it be how the transaction was initiated or where the work was performed. Certainly, Insultech's entry into this State by e-mail to *Page 1119 
begin a business relationship with Hiller Systems and then to solicit a financial arrangement from Hiller for amounts Insultech owed is highly significant. In our inquiry as to whether there exist minimum contacts to satisfy the requirements of due process, we consider all of the following: (a) that Insultech twice initiated contacts in Alabama for a business transaction; (b) that Insultech negotiated transactions with representatives of Hiller and Hiller Systems, who were in Alabama; (c) that Insultech performed its obligations under the subcontract arrangement and the purported settlement agreement by making payments to Hiller in Alabama; and (d) that there were approximately 40 interstate communications with representatives of Hiller and Hiller Systems in Alabama concerning the subject transactions.
Considering all of these factors, we hold that Insultech had sufficient contacts with Alabama to satisfy the requirements of constitutional due process and Rule 4.2(b), Ala. R. Civ. P. Given these factors, Insultech can hardly assert that it could not have reasonably anticipated being haled into court in Alabama if Hiller was harmed in this State as a result of the transaction. Our conclusion is in accord with the principle stated in the Committee Comments to 1977 Complete Revision to Rule 4.2 that, "`[i]f there is a minimum of contacts [with Alabama], and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction.'" Quoting 2 J. Moore, Federal Practice, Par. 4.25 at 1171-73 (2d ed. 1953).
Having found minimum contacts between Insultech's activities and this State that form the basis of Hiller's cause of action, the next consideration is "whether subjecting [the nonresident defendant] to Alabama's jurisdiction would violate traditional notions of `fair play and substantial justice.'" Leitheadv. Banyan Corp., 926 So.2d 1025, 1032 (Ala. 2005) (quotingInternational Shoe Co. v. Washington, 326 U.S. 310,320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). We do not analyze those notions here, however, because Insultech has not argued on appeal that litigation in Alabama would be unfair or burdensome.
 IV. Conclusion
For the reasons stated above, the trial court erred when it dismissed Hiller's breach-of-contract action against Insultech. Because Insultech purposefully availed itself of the privilege of conducting business in Alabama, the Mobile Circuit Court has specific in personam jurisdiction over Insultech as to Hiller's claim. The judgment dismissing Insultech is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[1] Insultech's invitation to Hiller Systems to bid indicated that the deck-covering work would be performed in Florida.
[2] The trial court's order did not specify the reasons for the dismissal.
[3] The Court noted that "[t]he fabrication of materials in Alabama by Steel Processors represents `unilateral activity of those who claim some relationship with a nonresident defendant [and] cannot [alone] satisfy the requirement of contact with the forum State.'" 622 So.2d at 914 n. 2 (quoting Hanson v.Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283
(1958)).
[4] The cases cited by Insultech in support of this proposition include: Torco Oil Co. v. Innovative ThermalCorp., 730 F.Supp. 126, 130 (N.D.Ill. 1989) (contact by defendant "made solely through telephone calls and mail communication . . . is a significant, but not controlling, factor"); and Bartusch v. Oregon State Bd. of HigherEduc., 131 Wash.App. 298, 307, 126 P.3d 840, 844 (2006) (which party initiated contact is "merely relevant and not determinative").