698 S.E.2d 626

**Patricia H. PITTS and Robert G. Pitts, Respondents,**

v.

**Chad FINK, Appellant.**

No. 4706.

Court of Appeals of South Carolina.

Submitted May 3, 2010.

Decided June 30, 2010.

Withdrawn, Substituted and Refiled Aug. 24, 2010.

Rehearing Denied Aug. 24, 2010.

J. René Josey and Jeffrey L. Payne, of Florence, for Appellant.

Charles J. Hupfer, Jr. and Van Whitehead, of Florence, for Respondents.

PIEPER, J.

In this appeal challenging the enforcement of an Alabama default judgment in South Carolina, Chad Fink asserts the circuit court erred in denying his motion for relief from judgment, arguing the judgment was void for lack of personal jurisdiction. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

This action to domesticate an Alabama default judgment stems from a dispute over funds loaned by Patricia and Robert Pitts (Mr. and Mrs. Pitts) to Fink, Charles Hobbs, and Barton Pitts pursuant to a loan agreement. The $455,000 loan was in furtherance of the business interests of Roundabout Plantation, an Alabama L.L.C., which was operated by Fink, Hobbs, and Pitts for the purpose of developing a golf course and subdivision in Houston County, Alabama. Hobbs and Pitts were also named as defendants in the action on the loan.

The loan agreement, which was prepared by the borrowers, bore the caption, "State of Alabama, Houston County," and contained a choice of law provision stating, "[t]he parties hereto agree that this agreement shall be construed and enforced according to the laws of the State of Alabama." The agreement further provided that each of the members of Roundabout Plantation agreed and acknowledged they would be jointly and severally liable for the payment of all sums advanced and all sums which may become due under the terms and conditions of the agreement. A provision for the payment of attorney's fees, in the event the lender would have

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

to employ the services of an attorney to collect any sums due under the agreement, was also included.

When Mr. and Mrs. Pitts were not repaid under the terms of the loan agreement, they initiated the underlying action in Houston County, Alabama. Despite signing the return of service, Fink did not file a response, and a judgment by default was entered against him for the sum of $795,940.78, plus interest and costs.

Thereafter, in an effort to enforce the Alabama default judgment in South Carolina, Mr. and Mrs. Pitts filed the judgment in Darlington County, South Carolina. Fink responded by filing a motion for relief from judgment pursuant to Rule 60(b)(4), SCRCP, and section 15–35–940 of the South Carolina Code (2005), asserting the Alabama judgment was void for lack of personal jurisdiction.

During the discovery that ensued, Mr. and Mrs. Pitts learned that Fink went to Alabama approximately a dozen times to monitor the progress of the golf course. Fink testified in his deposition that the loan proceeds were used for the construction and development of the golf course. Fink further testified that although he did not remember executing the loan agreement, his signature appeared on the document. He also conceded that the signature on the return of service to the summons and complaint appeared to be his own.

Following a hearing on the matter, the circuit court issued an order denying the motion for relief from judgment. The order further directed that the Alabama default judgment be entered in South Carolina in accordance with the notice of filing of foreign judgment by Mr. and Mrs. Pitts. Fink did not file a motion to alter or amend. This appeal followed.

## STANDARD OF REVIEW

██ "An action to enforce a foreign judgment is an action at law." *Minorplanet Sys. USA Ltd. v. Am. Aire, Inc.*, 368 S.C. 146, 149, 628 S.E.2d 43, 44 (2006). In an action at law, tried by a judge without a jury, we accept the findings of the trial court if there is any evidence to support the findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

**LAW/ANALYSIS**

This case involves a challenge to the domestication of an Alabama default judgment due to lack of personal jurisdiction; thus, we are not called upon to review the merits of the underlying claim. Pursuant to South Carolina's version of the Uniform Enforcement of Foreign Judgments Act (UEFJA), a judgment debtor is permitted to file a motion for relief from judgment or a notice of defense to a foreign judgment on any ground for which relief from a judgment of this state is allowed. S.C.Code Ann. § 15–35–940(A) (2005); *cf. Law Firm of Paul L. Erickson, P.A. v. Boykin*, 383 S.C. 497, 505, 681 S.E.2d 575, 579–80 (2009) (striking a portion of section 15–35–940(b) as unconstitutional but severable from the remainder of the statute). Applying the appropriate constitutional and due process considerations, we find the motion for relief from judgment was properly denied.

Under Article IV, Section 1 of the United States Constitution, "Full Faith and Credit shall be given in each state to the public acts, records, and judicial proceedings of every other State." U.S. Const. art. IV, § 1. In accordance with this provision, every state is required to give to a judgment at least the res judicata effect which the judgment would be accorded in the state where rendered. *Hospitality Mgmt. Assocs., Inc. v. Shell Oil Co.*, 356 S.C. 644, 653, 591 S.E.2d 611, 616 (2004) (citing *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)). However, "[a] judgment of a court without jurisdiction of the person or of the subject matter is not entitled to recognition or enforcement in another state, or to the full faith and credit provided for in the federal Constitution." *Fin. Fed. Credit Inc. v. Brown*, 384 S.C. 555, 562–63, 683 S.E.2d 486, 490 (2009) (quoting 50 C.J.S. Judgments § 986 (1997)). Where the court of the issuing state has fully and fairly litigated and finally decided the question of jurisdiction, further inquiry into the jurisdiction of the issuing court is precluded. *Durfee*, 375 U.S. at 111, 84 S.Ct. 242. Otherwise, "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705, 102 S.Ct. 1357, 71 L.Ed.2d 558

(1982). Similarly, under the UEFJA, a judgment debtor may seek relief from a judgment due to a lack of personal jurisdiction. *PYA/Monarch, Inc. v. Sowell's Meats & Servs., Inc.*, 327 S.C. 469, 473, 486 S.E.2d 766, 768 (Ct.App.1997).

Turning to the instant case, since the issue of personal jurisdiction in Alabama was neither fully litigated nor finally decided, we undertake the jurisdictional inquiry suggested in *Underwriters Nat'l Assurance Co.* When determining the validity and effect of a foreign judgment based on lack of personal jurisdiction, courts look to the law of the state that rendered the judgment. *Fin. Fed. Credit Inc.*, 384 S.C. at 566–67, 683 S.E.2d at 492. Thus, to ascertain whether the Alabama court properly exercised jurisdiction over Fink, we must consult Alabama law regarding personal jurisdiction.

Alabama's long-arm rule authorizes the assertion of personal jurisdiction to the limits of due process under the federal and state constitutions. *Leithead v. Banyan Corp.*, 926 So.2d 1025, 1030 (Ala.2005) (noting "Alabama's long-arm 'statute,' which is actually Rule 4.2, Ala. R. Civ. P., extends to the limits of due process.").[2] Alabama courts have interpreted the due process rights guaranteed under the Alabama Constitution to be coextensive with the due process rights guaranteed by the United States Constitution. *Elliott v. Van Kleef,* 830 So.2d 726, 730 (Ala.2002). Courts employ a two-pronged test for due process. First, the defendant must have certain minimum contacts with the forum state. *Id.* at 730–31 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Second, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. Under the minimum contacts prong, the defen-

---

**2.** Effective August 1, 2004, Rule 4.2 was amended and rewritten. Rule 4.2, Ala. R. Civ. P. (committee comments). The former Rule 4.2 included a "laundry list" of types of conduct that would subject an out-of-state defendant to personal jurisdiction in Alabama, as well as containing the "catchall" clause now contained in the new 4.2(b). *Id.* According to the committee comments to the amendment, "[b]ecause the 'catchall' clause has consistently been interpreted to go to the full extent of federal due process ... it is no longer necessary to retain the 'laundry list' in the text of the Rule." *Id.* Likewise, whether we apply the former Rule 4.2 or the new Rule 4.2, our analysis of Alabama's long-arm "rule" in the matter at hand remains the same.

dant's conduct and connection with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Further, "the minimum contacts test ... is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." *Kulko v. Sup. Ct. of Cal.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (internal quotation omitted).

The level and character of a party's minimum contacts is assessed based on whether the contacts are general or specific. *Ex Parte Full Circle Distribution, L.L.C.*, 883 So.2d 638, 644 (Ala.2003). "General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both 'continuous and systematic.'" *Ex Parte Phase III Constr., Inc.*, 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "Specific contacts, which give rise to specific personal jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472–75, 105 S.Ct. 2174). "Although the related contacts [for specific jurisdiction] need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state." *Id.*

Because Fink had no "continuous and systematic" contacts with Alabama, principles of general jurisdiction are not controlling. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416, 104 S.Ct. 1868. Thus, we confine our analysis to the nature and extent of Fink's contacts in the context of specific jurisdiction. In this situation, the jurisdictional inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Additionally, there must exist a clear, firm nexus between the acts of the defendant and the allegations forming the basis of the complaint. *Duke v. Young*, 496 So.2d 37, 39 (Ala.1986). Pursuant to that analysis, "[t]he substantial connection be-

tween the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotation omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations omitted) (internal citations omitted).

In regard to contractual relationships, the United States Supreme Court has emphasized "the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Id.* at 479, 105 S.Ct. 2174 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–17, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*

 Applying these principles to the present case, we find Fink's contacts suffice to meet the requirements of personal jurisdiction in Alabama. Fink executed the loan agreement as a part-owner of Roundabout Plantation, an Alabama L.L.C., and the proceeds of the loan were to be used to construct a golf course and subdivision owned and operated by Roundabout Plantation in Alabama. The loan payments were also to be made from the proceeds of Roundabout Plantation's Alabama operations. By constructing the golf course and subdivision in Alabama from the loan proceeds and by traveling to Alabama periodically to oversee its operation and to monitor the use of the loan proceeds, Fink established a continuing relationship with Alabama in connection with the loan.

Furthermore, the loan agreement was captioned "Houston County, Alabama," and contained an Alabama choice of law provision. In *Corporate Waste Alternatives, Inc. v. McLane*

*Cumberland, Inc.*, 896 So.2d 410 (Ala.2004), the Supreme Court of Alabama was presented with the issue of personal jurisdiction in a dispute concerning a contract that contained an Alabama choice of law provision. There, in contemplation of the ramifications of the choice of law provision, the court noted, "the provision in the contract stating that the contract would be governed by Alabama law should have further alerted [the nonresident defendant] that it might reasonably anticipate being haled into court in [Alabama]." *Corporate Waste Alternatives, Inc.*, 896 So.2d at 414 (citing *Elliott,* 830 So.2d at 730) (internal quotations omitted). While we recognize that a choice of law provision standing alone would be insufficient to confer jurisdiction, it is certainly relevant under the facts of this case. *See Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. 2174 (stating that a choice of law provision is relevant but "such a provision standing alone would be insufficient to confer jurisdiction").

Notwithstanding the caption and choice of law provision, the terms of the agreement itself reveal the loan was inextricably linked with Fink's Alabama business. As established by the agreement's identification of the "Borrower" as "all members of Roundabout Plantation, L.L.C.," this direct connection to the Alabama business resonates throughout the agreement. From the subsequent clause indicating "Roundabout Plantation, L.L.C. is developing a subdivision and golf course in Houston County, Alabama" to the express statement that the loan is "for use in the construction and development of the subdivision and golf course described hereinabove," the plain language of the agreement established a direct link to Alabama. This link is further reinforced by the terms of the agreement governing the use of proceeds and payment. In particular, the agreement designated the proceeds of the loan to be used "only for the purposes set forth herein and for the payment of accrued interest during the term of this loan" and established the term of the loan based on the progress of Roundabout Plantation's Alabama development, stating the term of the loan shall be for a period of five years "or until such time as fifty (50%) percent of the residential lots contained within the Roundabout Plantation, L.L.C. development in Houston County, Alabama shall have been sold."

With specific regard to minimum contacts, Fink's deposition testimony is also instructive. In particular, Fink's testimony confirmed that the loan proceeds were used for the construction and development of Roundabout Plantation. He further testified that he traveled to Alabama on at least twelve occasions over the course of two years to monitor the progress of the development. For instance, Fink testified he visited the golf course on one occasion to check up on the profit and loss statements for the canteen. On that visit, Fink spoke with the individual who ran the golf course canteen to verify whether the canteen's sales were consistent with those in the profit and loss statements. Fink's actions in traveling to Alabama for the purpose of monitoring the progress of the Alabama development demonstrate a nexus between his undertaking as a part-owner of Roundabout Plantation and his responsibilities under the loan agreement. Moreover, Fink's actions in furtherance of his obligations as part-owner of Roundabout Plantation under the loan agreement were purposely directed toward the forum state so as to establish a substantial connection to Alabama. Most notably, Fink's conduct with the forum was not the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.

In asserting Fink's contacts lacked a firm nexus to the allegations of the complaint, Fink relies on *Duke v. Young,* 496 So.2d 37 (Ala.1986), and its application of the "effects test" outlined in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). These cases are distinguishable. In *Calder,* the United States Supreme Court approved a test employed by the California courts for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum. *Id.* at 787, 104 S.Ct. 1482. Rather than focusing only on the defendant's conduct within or contacts with the forum, the "effects test" set forth in *Calder* allows long-arm jurisdiction to be based on the effects within the forum of tortious conduct outside the forum. *Id.* Subsequently, in *Duke v. Young,* the Supreme Court of Alabama applied the "effects test" articulated in *Calder. Duke,* 496 So.2d at 39. There, in finding personal jurisdiction was proper, the *Duke* court, citing *Calder,* noted "[t]he defendants' 'intentional, and allegedly tortious, actions

were expressly aimed at' Alabama." *Duke,* 496 So.2d at 40. While courts are split in their interpretation of the breadth of the *Calder* "effects test," courts unanimously agree the test requires that the defendant commit an intentional tort aimed at the forum state.[3] *See Walker v. Biogistics, Inc.,* 2009 WL 856998, *1 (S.D.Ala.2009) (noting "the 'Calder effects test' for personal jurisdiction requires 'the commission of an intentional tort [ ] expressly aimed at a specific individual in the forum whose effects were suffered in the forum.' " (quoting *Licciardello v. Lovelady,* 544 F.3d 1280, 1288 (11th Cir.2008))). As the allegations in the complaint in the present action remain purely contractual, we find consideration of the "effects test" unwarranted.

In sum, based on the language of the loan agreement and Fink's corresponding actions purposely directed toward Alabama, we conclude Fink had fair warning of the link between the loan and Alabama. Furthermore, as in *Burger King* and *Corporate Waste Alternatives,* Fink's direct contacts with Alabama in monitoring the use of the loan proceeds and the progress of the Alabama development in conjunction with the choice of law provision designating the law of Alabama as the governing law bolster his deliberate affiliation with Alabama and the reasonable foreseeability of possible litigation there. *See Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. 2174 (holding the defendant " 'purposely availed himself of the benefits and protections of Florida's laws' by entering into contracts expressly providing that those laws would govern franchise disputes."); *Corporate Waste Alternatives, Inc.,* 896 So.2d at 414 (noting "the provision in the contract stating that the contract would be governed by Alabama law should have further alerted [the nonresident defendant] that it might reasonably anticipate being haled into court in [Alabama].").
Thus, based on these actions, we conclude Fink's contacts with

---

3. *See also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 398 n. 7 (4th Cir.2003) (stating the " 'effects test' of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.").

the state of Alabama reasonably suggest Fink should have anticipated being haled into court in Alabama.

Having determined the requisite minimum contacts have been established, we now turn to whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154. In addressing this prong, we must consider the contacts in light of other factors, such as the burden on the defendant of litigating in the forum state, as well as the forum state's interest in adjudicating the dispute. *Elliott*, 830 So.2d at 731. Initially, we note Fink has not argued on appeal that litigation in Alabama would be unfair or burdensome; thus, consideration of this argument is not preserved for review. *See Hiller Invs. Inc. v. Insultech Group, Inc.*, 957 So.2d 1111, 1119 (Ala.2006) (holding the court need not analyze whether subjecting the nonresident defendant to Alabama's jurisdiction would violate the traditional notions of fair play and substantial justice where the nonresident defendant has not argued those issues on appeal).

Nonetheless, were we to reach this issue, we note that Fink submitted to the jurisdiction of Alabama in two other foreclosure suits pertaining to Roundabout Plantation. Specifically, Fink was involved in litigation against Frizzell Construction Company concerning the breach of a promissory note; he also was involved in a similar action by Peoples Community Bank in 2002. Both actions were maintained in Alabama, and Fink did not plead lack of personal jurisdiction in either case. Notwithstanding, Fink's numerous contacts with Alabama relative to Roundabout Plantation in conjunction with his visits to monitor the progress of the development indicate the burden of defending an action in Alabama does not rise to the level of being inconsistent with traditional notions of fair play and substantial justice. *See also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957))).

## CONCLUSION

Viewing the totality of the facts in the instant case, we find, for purposes of personal jurisdiction, Fink maintained sufficient minimum contacts to satisfy Alabama's long-arm rule and federal due process. Consequently, the enforcement of the Alabama default judgment against Fink in South Carolina was proper.[4] Accordingly, the order of the circuit court is

**AFFIRMED.**

FEW, C.J., and THOMAS, J., concur.

---

4. Fink also appeals the amount of attorney's fees awarded in the judgment. Although raised at the hearing, we find this issue is not preserved as it was neither ruled upon by the circuit court nor raised by way of a post-trial motion to alter or amend. *See Elam v. S.C. Dep't. of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *must* file [a Rule 59(e) ] motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review.") (emphasis in original). In fact, attorney's fees were not even mentioned in the order; thus, even if we were to find the amount of fees awarded troubling, the matter is not properly before us for review.