COBB, Chief Justice.
Wesley Frye, as personal representative of the estate of Rhonda Rainey, deceased, and Roderick Stacy Arthur, as father and next friend of Ryan Arthur and Roderick Arthur, minors (collectively, “the plaintiffs”), appeal from the order of the Calhoun Circuit Court dismissing their claims against John F. Smith, Jr., Harry J. Pearce, and J. Michael Losh based on a lack of personal jurisdiction. The plaintiffs also challenge the order of the Calhoun Circuit Court denying their motion to supplement the record on appeal. We affirm.

Facts

On or about June 19, 2006, Rhonda Rai-ney and minors Roderick Arthur and Ryan Arthur were involved in an automobile accident while they were passengers in a 1998 Chevrolet Blazer sport-utility vehicle being driven by Christopher Rainey, Rhonda’s husband and Roderick’s and Ryan’s stepfather. Roderick and Ryan were injured, and Rainey died as a result of injuries sustained in the accident. On June 17, 2008, the plaintiffs filed a complaint in the Calhoun Circuit Court naming as defendants General Motors Corporation (“GM”), the manufacturer of the Blazer, and Massey Chevrolet-Olds-Geo, Inc., the dealer who sold the Raineys the Blazer. The plaintiffs sought damages for wrongful death as to Rhonda and for personal injuries as to Roderick and Ryan, alleging claims of negligence and breach of warranty, as well as claims under the Alabama Extended Manufacturer’s Liability Doctrine (“the AEMLD”).
On June 12, 2009, GM filed a notice of bankruptcy in the United States Bankruptcy Court for the Southern District of New York, thereby invoking the automatic stay codified at 11 U.S.C. § 362.
On September 22, 2009, the plaintiffs amended their complaint to state claims against the following individuals: John F. Smith, Jr., former chairman of the board of directors of GM; Harry J. Pearce, former vice chairman of the board of directors of GM; and J. Michael Losh, former executive vice president of GM (Smith, Pearce, and Losh are hereinafter referred to as “the individual defendants”).
On November 2, 2009, the individual defendants moved to dismiss the claims against them for lack of personal jurisdiction. In support of the motion to dismiss, the individual defendants each submitted an affidavit.
On November 9, 2009, the trial court set a hearing date on the individual defendants’ motion to dismiss. On November 18, 2009, the plaintiffs moved for a continuance of the hearing until after the individual defendants served a response to interrogatories propounded by the plaintiffs. On November 25, 2010, the trial court *885 granted the plaintiffs’ motion for a continuance.
On November 23, 2010, the plaintiffs filed a second amendment to their complaint. In it, they made the following allegations:
“That the defendant John F. Smith, Jr. was Chairman of the Board of Directors of [GM] from January 1996 to May 2003, served as Chief Executive Officer of said corporation from November 1992 to June 2000, and was President of same from April 1992 to October 1998.
“... That the defendant Harry J. Pearce was Vice Chairman of [GM] and a member of the Board of Directors of same from 1996 to 2001.
“... That the defendant J. Michael Losh was Executive Vice President and Chief Financial Officer of [GM] from 1994 to 2000.
“. . That [the individual defendants] held said positions in the corporate business as set out in the next preceding three paragraphs during the time that the 1998 model Blazer motor vehicles, like and including the one which is the subject of this suit, were designed, manufactured, marketed and placed in the stream of commerce in the regular course of the corporate business.
“That by virtue of their said positions, said defendant officers had affirmative official responsibility in the management and control of the corporate business at the time that the 1998 model Blazer motor vehicles, like and including the one which is the subject of this suit, were designed, manufactured, marketed and placed in the stream of commerce in the regular course of corporate business.
“... That the defendant officers knew or should have known at the time said vehicles were designed, manufactured, marketed and placed in the stream of commerce in the regular course of the corporate business that said 1998 model Blazer motor vehicles were defective and unreasonably dangerous because of those design defects as alleged in the original complaint.
“... That the corporate business and the said defendant officers had the expectation that the said 1998 model Blazer motor vehicles would be purchased by consumers in Alabama and the 1998 model motor vehicle which is the subject of this suit was purchased by a consumer in Alabama.
[[Image here]]
“... That at the time the 1998 model Blazer motor vehicles were placed in the stream of commerce and thereafter during the time that the said defendant officers held their aforesaid positions with the corporate business, the said defendant officers knew or should have known by virtue of lawsuits, judgments, settlements, tests, crash tests, reports, studies, complaints or otherwise that said 1998 model Blazer motor vehicles were defective and unreasonably dangerous in regard to those defects as alleged in the original complaint.
[[Image here]]
“... That the corporate business and the said defendant officers, separately and severally, had the expectation that the said 1998 model Blazer motor vehicles would be purchased by consumers in Alabama and the motor vehicle that is the subject of this suit was purchased in Alabama.”
On December 18, 2010, the individual defendants again moved to dismiss the claims against them for lack of personal jurisdiction and submitted affidavits in support of the motion. In his affidavit, Smith stated:
“I was Chairman of the Board of Directors of [GM] from January 1996 to *886 May 2003,1 also served as Chief Executive Officer from November 1992 to June 2000 and was President from April 1992 to October 1998.
“... In my roles as Chairman of the Board of Directors, Chief Executive Officer, and President of [GM], I had no direct involvement in or immediate responsibility for the engineering, design, or product development functions of [GM], including the design, manufacture, testing, marketing, or placing into the stream of commerce of 1998 Chevrolet Blazers. As the Chairman of the Board of Directors, Chief Executive Officer, and President, my ‘affirmative official responsibilities]’ did not include or involve direct review of the engineering, design, and other product development decisions made regarding the design, manufacture, testing, marketing, or placing into the stream of commerce 1998 Chevrolet Blazers.
“... At the time the 1998 Chevrolet Blazer was placed into the stream of commerce by [GM], I had no knowledge of any lawsuits, judgements, settlements, tests, crash tests, reports, studies, complaints, or any other information that caused me to believe that the 1998 Chevrolet Blazer was defective or unreasonably dangerous or likely to be dangerous in any manner whatsoever, including the manner alleged by [the] Plaintiffs in this lawsuit. I also have not been made aware of any facts or information since the 1998 model year Chevrolet Blazers were placed into the stream of commerce that has caused me to believe that those vehicles are defective or unreasonably dangerous as alleged in [the] Plaintiffs’ Amended Complaints. In my roles as Chairman of the Board of Directors, Chief Executive Officer, and President of [GM], my ‘affirmative official responsibilities]’ did not include reviewing the engineering, design, and other product development decisions made during the design, engineering, manufacture, testing, marketing, and placing into the stream of commerce of specific models of [GM] cars and trucks, and I was never asked or called upon to review any such decisions made relating to the 1998 Chevrolet Blazer.
“... In my roles as Chairman of The Board of Directors, Chief Executive Officer, and President of [GM], I was not personally involved in or responsible for authorizing or directing that any warnings be provided or not provided with the 1998 Chevrolet Blazer. It was not within my ‘official affirmative responsibilities!’] as Chairman of the Board of Directors, Chief Executive Officer, or President to decide whether or not specific warnings were provided with [GM] vehicles or what the content of those warnings should be.
“... In my roles as Chairman of the Board of Directors, Chief Executive Officer, and President of [GM], I also was not personally involved in or responsible for authorizing or directing that any recall be initiated or not initiated with respect to the 1998 Chevrolet Blazer. It was not within my ‘official affirmative responsibilities!’] as Chairman of the Board of Directors, Chief Executive Officer, or President to decide whether or not to recall [GM] vehicles.”
Pearce and Losh submitted affidavits identical to the above affidavit submitted by Smith, with the exception of the affi-ant’s names and the titles of the positions held by the affiant at GM.
A second set of affidavits from the individual defendants also accompanied the individual defendants’ December 18, 2010, motion to dismiss. In Smith’s second affidavit, he made the following statements:
*887 “I currently reside in Florida. I have never maintained a residence in Alabama or owned possessed, or regularly used any real or personal property in Alabama. I have never paid taxes in Alabama and am not registered to vote in Alabama. I do not regularly travel to Alabama.
“... I can recall being in Alabama only one time in my life. I gave a speech at Auburn University some time in the mid 2000s, after my retirement from [GM], My speech at Auburn University had nothing to do with the design, development, testing, manufacture, advertising, or sales of 1998 Chevrolet Blazers.
“... I have never had any direct communications with any individual in the State of Alabama regarding the 1998 Chevrolet Blazer.
“... I was employed at [GM] from 1961 to 2003. During the time period that I held the positions referenced in [the] Plaintiffs’ Amended Complaint, my titles and positions were as follows: I was Chairman of the Board of Directors of [GM] from January 1996 to May 2003. I also served as Chief Executive Officer from November 1992 to June 2000 and was President from April 1992 to October 1998.
“... At no time during my employment at [GM] was I personally involved as the Release Engineer or Chief Engineer charged with release responsibility for the design, development, manufacture, or testing of any [GM] car, truck, or sport utility vehicle. I, likewise, was never personally involved as a Release Engineer or an engineer otherwise charged with release responsibility for the design, development, manufacture, or testing of the roof, seat, seatbelt system, or handling and stability systems used by [GM] in any car, truck, or sport utility vehicle.
[[Image here]]
“... I never made any decision regarding any specific [GM] vehicle or line of vehicles, including the 1998 Chevrolet Blazer, that was specifically or uniquely related to GM’s business within the State of Alabama. I never made any decision regarding any specific [GM] vehicle or line of vehicles, including the 1998 Chevrolet Blazer, that was outside the scope of my employment at [GM].
“... None of the compensation I received as an employee of [GM] was specifically dependant on the level of services performed, or the amount of goods sold by [GM] in Alabama.
“... I have never personally done or solicited business in the State of Alabama in connection with my employment at [GM].
“... I have never done business or solicited business in Alabama on my own behalf. I have never personally incorporated or otherwise formed a business entity within Alabama or otherwise transacted business in Alabama on my own behalf.
“... I have never maintained an office or otherwise worked in Alabama. I do not now hold, nor have I ever held, any Alabama professional or recreational licenses.
“... I do not now have, nor have I ever had, any substantial ties to Alabama and I am not involved in any activities in that state.
“... I have never served on the boards of any other companies or charities located in Alabama and have not attended any meetings in that state.
“... I did not receive a copy of the Summons and Complaint in this case. Prior to this case, to my knowledge, I have never been named as a party to *888 litigation in the Alabama courts or in an administrative proceeding. I have never attempted to use the Alabama courts to bring an action or claim against another party, nor have I ever voluntarily submitted myself to the jurisdiction of the Alabama courts.”
In Pearce’s second affidavit, he stated the following facts:
“I currently reside in Michigan. I have never maintained a residence in Alabama. Nor have I owned, possessed, or regularly used any real or personal property in Alabama. I have never paid taxes in Alabama and am not registered to vote in Alabama. I do not regularly travel to Alabama.
“... I have no recollection of ever being within the State of Alabama in my life. “... I have never had any direct communications with any individual in the State of Alabama regarding the 1998 Chevrolet Blazer.
“... I was employed at [GM] from 1985 to 2001. During the time period that I held the positions referenced in [the] Plaintiffs’ Amended Complaint, my titles and positions were as follows. I was Vice Chairman of [GM] and a member of the Board of Directors of [GM] from 1996 to 2001.
“... At no time during my employment at [GM] was I personally involved as the Release Engineer or Chief Engineer charged with release responsibility for the design, development, manufacture, or testing of any [GM] car, truck, or sport utility vehicle. I, likewise, was never personally involved as a Release Engineer or an engineer otherwise charged with release responsibility for the design, development, manufacture, or testing of the roof, seat, seatbelt system, or handling and stability systems used by [GM] in any car, truck, or sport utility vehicle.
[[Image here]]
“... None of the compensation I received as an employee of [GM] was specifically dependant on the level of services performed, or the amount of goods sold by [GM] in Alabama.
“... I have never personally done or solicited business in the State of Alabama in connection with my employment at [GM],
“... I have never done business or solicited business in Alabama on my own behalf. I have never personally incorporated or otherwise formed a business entity within Alabama or otherwise transacted business in Alabama on my own behalf.
“... I have never maintained an office or otherwise worked in Alabama. I do not now hold, nor have I ever held, any Alabama professional or recreational licenses.
“... I do not now have, nor have I ever had, any substantial ties to Alabama and I am not involved in any activities in that state.
“... I have never served on the boards of any other companies or charities located in Alabama and have not attended any meetings in that state.
“... I did not receive a copy of the Summons and Complaint in this case. Prior to this case, to my knowledge, I have never been named as a party to litigation in the Alabama courts or in an administrative proceeding. I have never attempted to use the Alabama courts to bring an action or claim against another party, nor have I ever voluntarily submitted myself to the jurisdiction of the Alabama courts.”
A second affidavit by Losh was submitted with the individual defendants’ December 18, 2010, motion to dismiss. In that affidavit, Losh stated:
*889 “I currently reside in Michigan. I have never maintained a residence in Alabama. Nor have I owned, possessed, or regularly used any real or personal property in Alabama. I have never paid taxes in Alabama and am not registered to vote in Alabama. I do not regularly travel to Alabama.
“... I can recall being in Alabama only two times in my life. In the 1970s, I passed through Alabama as I was driving from New Orleans to the Midwest. I also attended the NASCAR race at Talladega some time in the 1980s. The purpose of these two trips had nothing to do with the design, development, testing, manufacture, advertising, or sales of 1998 Chevrolet Blazers.
“... I have never had any direct communications with any individual in the State of Aabama regarding the 1998 Chevrolet Blazer.
“... I was employed at [GM] from 1964 to 2000. During the time period that I held the positions referenced in [the] Plaintiffs’ Amended Complaint, my titles and positions were as follows. I was Executive Vice President and Chief Financial Officer of [GM] from 1994 to 2000.”
On March 15, 2010, the plaintiffs filed a memorandum in opposition to the individual defendants’ motion to dismiss, relying in part on the individual defendants’ answers to interrogatories. However, the plaintiffs did not submit as evidence copies of the individual defendants’ answers to interrogatories. The plaintiffs did submit with their memorandum the affidavit of the plaintiffs’ expert, Stephen R. Syson. In his affidavit, Syson stated:
“My opinions are based on my background, experience and expertise in the field of automotive design and analysis engineering, and on the application of recognized laws of physics and principles of mechanical and automotive engineering to the specific issues raised by the events in question, as well as my knowledge and experience with automobile safety as known by the automotive community.
“... My expertise includes the field of automotive design analysis engineering — the specialty of analyzing the design and performance of vehicles, including restraint systems. While employed by [GM], I was assigned to the [GM] Safety Research and Development Laboratory (SRDL) at the [GM] Proving Grounds, from September 1971 through August 1978, as an engineer in the restraints, structures and analytical groups. Additionally, I was responsible for analyzing crash tests, sled tests and field performance of [GM] vehicles and restraint systems.”
Syson opined that the 1998 Chevrolet Blazer and models of the Blazer for prior years were
“defective in their handling and stability characteristics because they are top-heavy, with a high center of gravity, and prone to driver responses (due to the poor handling characteristics) that lead even trained test drivers to lose control of these vehicles, making a rollover accident inevitable, as it happened in this instant accident.
[[Image here]]
“... At the time the 1998 model year Chevrolet Blazer was distributed, marketed, sold and placed in the stream of commerce, its prior model years predecessor, including the 1997 model year vehicle, all of which utilized the same defective designs had been the subject of numerous lawsuits, judgments and settlements because of said defective designs, particularly its propensity to roll over, and had been the subject of tests, crash tests reports, studies and com *890 plaints attesting to said propensity to roll over for many years before it was placed into the stream of commerce.
“... Based on all of the above, in my opinion, the [individual] defendants in this case, Smith, Pearce and Losh, knew at the time that the 1998 model year Chevrolet Blazer motor vehicles, like and including the one that is the subject of this suit, were distributed, marketed, sold and placed in the stream of commerce that said vehicles were defective and unreasonably dangerous in that they were inherently unstable due to the propensity to roll over in foreseeable accidents; the very thing that happened in this accident, causing a catastrophic injury in one child and the death of the other [sic].”
On March 31, 2010, following a hearing on the individual defendants’ motion to dismiss, the trial court granted the motion and dismissed the claims against the individual defendants for lack of personal jurisdiction.
On May 6, 2010, the plaintiffs moved for leave to supplement the record on appeal with the individual defendants’ answers to interrogatories on which the plaintiffs had relied in response to the individual defendants’ motion to dismiss and which they argued, would have provided a basis for personal jurisdiction. On May 13, 2010, the trial court certified its March 31, 2010, order dismissing the claims against the individual defendants as final pursuant to Rule 54(b), Ala. R. Civ. P. On June 24, 2010, the plaintiffs filed a notice of appeal from the trial court’s order dismissing their claims against the individual defendants. On July 1, 2010, the trial court denied the plaintiffs’ motion to supplement the record.

Standard of Review

I. Motion to Supplement the Record

A trial court’s decision on a motion to supplement the appellate record under Rule 10(f), Ala. R.App. P., is left to the trial court’s sound discretion, and will be reversed only if the trial court has exceeded its discretion in ruling on the motion. See Prattville Mem’l Chapel v. Parker, 10 So.3d 546 (Ala.2008) (reviewing a trial court’s decision whether to supplement an appellate record under Rule 10(f), Ala. R.App. P., under the excess-of-discretion standard).

II. Motion to Dismiss for Lack of Personal Jurisdiction

“An appellate court considers de novo a trial court’s judgment on a party’s’ motion to dismiss for lack of personal jurisdiction. Greene v. Connelly, 628 So.2d 346, 351-52 (Ala.1993); Williams v. Skysite Communications Co[rp.], 781 So.2d 241, 245 (Ala.Civ.App.2000).” Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).
“ ‘In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and “where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.” Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).’”
Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)).
“However, if the defendant makes a pri-ma facie evidentiary showing that the Court has no personal jurisdiction, ‘the *891 plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) (When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.’) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).”
Ex parte Covington Pike Dodge, Inc. 904 So.2d 226, 229-30 (Ala.2004).

Analysis

I. Motion to Supplement

In opposition to the individual defendants’ motion to dismiss, the plaintiffs relied in part on the individual defendants’ answers to interrogatories. However, the plaintiffs did not submit as evidence copies of those answers. After the trial court granted the individual defendants’ motion to dismiss, but before the trial court certified its ruling on the motion to dismiss as final pursuant to Rule 54(b), Ala. R. Civ. P., and before the plaintiffs filed their notice of appeal, the plaintiffs filed a motion requesting the trial court to permit them to supplement the record on appeal with the individual defendants’ answers to interrogatories. It is clear from the substance of the plaintiffs’ motion to supplement that, although a final judgment had not yet been entered at the time the motion was filed, the only purpose of the motion was to supplement the record for purposes of this appeal.[1] We review the trial court’s ruling on a motion to supplement the appellate record to determine whether, in so ruling, the trial court exceeded its discretion. Prattville Mem’l Chapel v. Parker, 10 So.3d 546 (Ala.2008) (reviewing a trial court’s decision whether to grant a motion to supplement an appellate record under Rule 10(f), Ala. R.App. P., under the excess-of-discretion standard).
According to the plaintiffs, the individual defendants stated in answers to interrogatories that they “do not recall” being personally aware of any lawsuit alleging that the 1998 model year Blazer sport-utility vehicle was defective, receiving any GM internal documents indicating that the vehicle was defective, or having any conversation within GM about any design defect in the vehicle. The plaintiffs argue that “ ‘do not recall’ is a nonanswer, and directly contradicts the testimony in the defendants’ sworn affidavits. Such evidence effectively negates that defendants’ affidavit testimony and leaves the [plaintiffs’ pleadings unchallenged.” Plaintiffs’ brief, at 27.
Having reviewed the individual defendants’ affidavits in detail, we conclude that those affidavits do not conflict with their answers to interrogatories as stated by the plaintiffs. Moreover, in reviewing *892 the trial court’s ruling dismissing the claims against the individual defendants for lack of personal jurisdiction, this Court is limited to the record before the trial court at the time it ruled on that motion. Cf. Cowen v. M.S. Enters., Inc., 642 So.2d 453, 454 (Ala.1994) (“We initially note that this Court is limited to a review of the record alone, that is, it can consider only the evidence that was before the trial court when it made its ruling.”). For these reasons, even if the trial court had granted the plaintiffs’ motion to supplement and the individual defendants’ answers to interrogatories had been included in the record, they would have been superfluous to our analysis of the issue of personal jurisdiction. The trial court did not exceed its discretion in denying the plaintiffs’ motion to supplement the record.

II. Personal Jurisdiction

A. Limits of Personal Jurisdiction

 The personal jurisdiction of the Alabama courts extends to the limit of due process under the United States and the Alabama Constitutions. Ex parte DBI, Inc., 23 So.3d 635, 643 (Ala.2009). “ ‘The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient “minimum contacts” with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).’ ” Ex parte DBI, 23 So.3d at 644 (quoting Elliott v. Van Kleef 830 So.2d at 730).
A court may exercise personal jurisdiction where the defendant’s contacts with the forum state are sufficient to give rise to either specific jurisdiction or general jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A court exercises specific jurisdiction “when a controversy is related to or ‘arises out of a defendant’s contacts with the forum.” 466 U.S. at 414. In an action not arising out of or related to the defendant’s contacts with the forum, a court may exercise general jurisdiction by subjecting the defendant to in personam jurisdiction when the contacts between the defendant and the forum are continuous and systematic. 466 U.S. at 414. In any event, the critical question with regard to the nonresident defendant’s contacts is whether the contacts are such that the nonresident defendant “ ‘should reasonably anticipate being haled into court’ ” in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 486, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
Finally, “ ‘[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with “fair play and substantial justice.” ’ ” Ex parie DBI, 23 So.3d at 644 (quoting Burger King, 471 U.S. at 476).

B. Personal Jurisdiction Over the Individual Defendants

In Ex parie Alloy Wheels International, Ltd., 882 So.2d 819, (Ala.2003), this Court held that the Due Process Clause of the United States Constitution requires that specific jurisdiction must be based on an action of the defendant that is “ ‘ “more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.” ’ ” 882 So.2d at 824 (quoting Ex parte McInnis, 820 So.2d 795, 803 (Ala.2001), quoting in turn Asahi *893 Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 110, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O’Connor, J., plurality opinion)). Further, in Alloy Wheels, this Court held that “a defendant’s awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.” 882 So.2d at 824 (quoting Ex parte McInnis, 820 So.2d at 804, quoting in turn Asahi, 480 U.S. at 112 (O’Con-nor, J., plurality opinion)(emphasis omitted)).
In Ex parte DBI, Inc., supra, this Court overruled Alloy Wheels and held that “ ‘ “[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State” and those products subsequently injure forum consumers.’” 28 So.3d at 655 (quoting Burger King, 471 U.S. at 473, quoting in turn World-Wide Volkswagen Corp., 444 U.S. at 297-98).
However, in Ex parte DBI this Court did not retreat from the fundamental notion that “ ‘ “it is essential in each case that there be some act by which the defendant purposefully avails [himjself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” ’ ” Ex parte DBI, 23 So.3d at 652-53 (quoting Burger King, 471 U.S. at 475, quoting in turn Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). This ‘“purposeful availment’ requirement,” Ex parte DBI, 23 So.3d at 653, was not abandoned in Ex parte DBI; rather, it was reaffirmed and refined in that opinion.
In a nutshell, the plaintiffs argue that specific jurisdiction[2] exists in this case on the basis of the following alleged facts: (1) that, as corporate officers of GM, each of the individual defendants was responsible for the day-to-day operations of GM at the time GM placed the 1998 Chevrolet Blazer sport-utility vehicle in the stream of commerce, and (2) that (according to the plaintiffs) each of the individual defendants knew or should have known that the 1998 Chevrolet Blazer sport-utility vehicle was unreasonably dangerous at the time GM placed the vehicle into the stream of commerce.[3] The plaintiffs argue that under Ex parte DBI these facts are sufficient to give rise to specific jurisdiction over the individual defendants. We disagree.
The plaintiffs point to no action on the part of the individual defendants indicating that the individual defendants themselves participated in the design, engineering, *894 testing, marketing, safety, or recall decisions or activities involving the 1998 Chevrolet Blazer sport-utility vehicle, or that they were personally involved in placing the 1998 Chevrolet Blazer into the stream of commerce. Further, the affidavits of the individual defendants expressly disclaim taking part in, or any responsibility for, GM’s engineering, design, testing, marketing, safety, or recall decisions regarding the 1998 Chevrolet Blazer sport-utility vehicle. The individual defendants also disclaim responsibility for, or personal participation in, placing the 1998 Chevrolet Blazer into the stream of commerce. The plaintiffs have presented no evidence to rebut the individual defendants’ affidavits.
“[I]t is clear that jurisdiction over individual officers or employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself.... It is established that there must be a showing that the individual officers engaged in some activity that would subject them to the state’s long-arm statute before in personam jurisdiction can attach.” Thames v. Gunter-Dunn, Inc. 373 So.2d 640, 641-42 (Ala.1979). On this record, the individual defendants’ contacts with this State are not such that the individual defendants can be subjected to personal jurisdiction in this State. The only evidence before this Court establishes that the individual defendants’ personal participation in any of GM’s activities would not amount to a purposeful availment on the part of the individual defendant of the privilege of conducting activities within Alabama with respect to the 1998 Chevrolet Blazer sport-utility vehicle. Neither did they engage in any such activities apart from their employment and apart from GM’s activities.
As this Court observed in Ex parte DBI:
“ ‘[T]he constitutional touchstone remains whether the defendant purposefully established “minimum contacts” in the forum State. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the [United States Supreme] Court has consistently held that this kind of foreseeability is not a “sufficient benchmark’’ for exercising personal jurisdiction. Instead, “the foreseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” In defining when it is that a potential defendant should “reasonably anticipate” out-of-state litigation, the [United States Supreme] Court frequently has drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 253 (1958):
«(«The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
“ ‘This “purposeful availment” requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of “random,” “fortuitous,” or “attenuated” contacts, or of the “unilateral activity of another party or a third person.” Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a “substantial connection” with the forum State.’ ”
*895 Ex parte DBI, 23 So.3d at 652-53 (quoting Burger King, 471 U.S. at 473-76) (emphasis omitted; emphasis added).
On this record, the evidence is not sufficient to support the exercise of personal jurisdiction over the individual defendants. Therefore, the judgment of the circuit court is affirmed.
AFFIRMED.
WOODALL, SMITH, PARKER, and SHAW, JJ., concur.

. The plaintiffs did not raise any new arguments in the motion to supplement, and they did not request that the trial court reconsider its ruling in light of the individual defendants’ answers to interrogatories. On the same day the plaintiffs filed their motion to supplement, they also filed a motion requesting that the trial court "amend or correct” the order granting the motion to dismiss. The plaintiffs requested no other amendment or correction to the trial court’s ruling on the motion to dismiss except that the trial court expressly make the appropriate findings to certify the order as final under Rule 54(b), Ala. R. Civ. P.

. The plaintiffs concede that the individual defendants do not have “continuous and systematic” contact with Alabama sufficient to give rise to general jurisdiction. Helicopteros Nacionales de Colombia, 466 U.S. at 414 n. 9.

. The plaintiffs submit evidence in the form of an affidavit of Stephen R. Syson, an engineer, stating that the design of the 1998 Chevrolet Blazer was similar to the previous models of the Chevrolet Blazer that were involved in lawsuits alleging design defects. According to Syson, the individual defendants should have known that the 1998 Chevrolet Blazer was dangerous because they should have known about the past lawsuits regarding previous models of the Blazer. We note that Syson’s testimony is based on his experience and training in the field of automotive design and analysis engineering. The record contains no evidence indicating that the individual defendants are experts in the field of automotive design and analysis engineering. However, the individual defendants do not object to Syson's affidavit on this basis.