Rel: April 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

## SC-2025-0826
_____

## Barbara Tanzer

## v.

## Alabama Department of Human Resources

## Appeal from Jefferson Probate Court
## (No. 24BHM00917)

SELLERS, Justice.

Barbara Tanzer appeals from a judgment of the Jefferson Probate Court appointing a permanent conservator to manage her estate. We reverse and remand.

## I.  Facts and Procedural History

Barbara and her husband, Jerome Tanzer, were long-term residents of Massachusetts. Between 2023 and 2024, the Tanzers relocated to several states, including North Carolina, Florida, and Georgia.  Barbara attributed the intervention of adult protective services as being one of the reasons she and Jerome moved so frequently. While in Georgia, Barbara executed a 15-month lease for an apartment in Birmingham, beginning April 8, 2024.  Barbara leased the apartment so that Jerome could be evaluated and treated for an eye condition at the "UAB Callahan Eye Foundation."

On April 15, 2024, the Alabama Department of Human Resources ("DHR") filed a petition with the probate court, pursuant to the Adult Protective Services Act ("the APSA"), § 38-9-1 et seq., Ala. Code 1975, alleging that Barbara, who was then 82 years old, was an "adult in need of protective services," as that term is defined in § 38-9-2, Ala. Code 1975,

which is part of the APSA.[1] The petition claimed, in relevant part, that Barbara had been found in her apartment soiled in urine; that she had been unable to ambulate; that she reportedly suffers from dementia; that she had been incoherent or unable to answer questions upon assessment; that she was unwilling or lacking in capacity to give consent to DHR to arrange for placement and/or other protective services; and, that there was no guardian or other person with the legal authority to assume responsibility for her assistance. The petition also sought the appointment of a temporary guardian ad litem and conservator, if necessary.[2] To establish jurisdiction, the petition asserted that Barbara

---

[1]Section 38-9-2(2) defines an "adult in need of protective services" as

"[a] person 18 years of age or older whose behavior indicates that he or she is mentally incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others, or who, because of physical or mental impairment, is unable to protect himself or herself from abuse, neglect, exploitation, sexual abuse, or emotional abuse by others, and who has no guardian, relative, or other appropriate person able, willing, and available to assume the kind and degree of protection and supervision required under the circumstances."

[2]DHR filed a separate petition, alleging that Jerome, who suffers from dementia, was also in need of protective services; however, this appeal concerns only Barbara.

uses Alabama as a "significant-connection state," pursuant to § 26-2B-203, Ala. Code 1975, a part of the Alabama Uniform Adult Guardianship and Protective Proceedings Act ("the AUAGPPA"), § 26-2B-1 et seq., Ala. Code 1975.   On that same day, the probate court entered a protective order authorizing DHR to provide emergency protective services for Barbara, including ordering her immediate transportation to a medical hospital for a complete physical and psychiatric evaluation; appointing a temporary guardian ad litem and court representative; and setting the matter for a hearing.

On April 16, 2024, Barbara was evaluated by Dr. Madabushi, who found that "Barbara exhibited no evidence of cognitive impairment and no evidence of imminent risk of self or others."  She was discharged later that month with 24-hour caregiver services.

On April 18, 2024, DHR filed in the probate court an emergency petition pursuant to the AUAGPPA, see § 26-2B-204, Ala. Code 1975, seeking an order staying all powers of attorney, freezing all assets, and appointing a special conservator regarding Barbara.  In that petition, DHR alleged that it had discovered that Ken Wilson, a person unrelated to Barbara, had used a power of attorney to withdraw $20,000 from one

4

of Barbara's accounts and that he had also allegedly tried to get Barbara discharged from the hospital where she was being evaluated under the probate court's protective order. The probate court entered an order freezing Barbara's assets, except those needed for her daily living expenses, and setting aside all powers of attorney concerning Barbara.

On May 9, 2024, Barbara was admitted to University of Alabama Hospital's Department of Psychiatry and Behavioral Neurobiology for evaluation by Dr. Chelsea Ross Miller. Dr. Miller indicated in her report that Barbara had physical infirmities requiring 24-hour supervision; that she currently met the diagnostic criteria for mild neurocognitive disorder; and that the information she had obtained from her interview with Barbara, along with test data, suggested that Barbara retained "medical decision-making capacity from a neurocognitive standpoint."

On May 15, 2024, Barbara, through hired counsel, answered DHR's April 15, 2024, petition, asserting, among other things, that the probate court lacked personal jurisdiction over her. Barbara specifically claimed in her answer, as well as in multiple pleadings seeking to terminate the protective proceedings, that she was not a resident of Jefferson County; that she was domiciled in the state of Georgia; that she had not used this

state as a significant-connection state; that she had used this state solely to acquire temporary housing for Jerome to seek evaluation and treatment for his eye condition at "UAB Callahan Eye Foundation"; and that her medical evaluations confirmed that she was competent.

In March 2025, while purportedly under the jurisdiction of the probate court, Barbara sold her real property in Georgia and purchased a condominium in Massachusetts. Two months later, Jerome died and Barbara, with the help of her caregivers, traveled with his remains to Massachusetts. In June 2025, Barbara notified the probate court that she had moved to Massachusetts and that she had no intention of returning to Alabama. The probate court ultimately issued letters of temporary conservatorship and guardianship to the county conservator, Edmond Earle. Following a final hearing, the probate court entered an order appointing attorney Barry Ragsdale as the conservator of Barbara's estate, pursuant to §§ 26-2A-130(c) and 26-2A-138, which are part of the Alabama Uniform Guardianship and Protective Proceedings Act, § 26-2A-1 et seq., Ala. Code 1975. The probate court's order also revoked all prior powers of attorney, estate-planning instruments, and trust agreements executed by Barbara and relieved DHR from providing

6

protective services, including services regarding Barbara's person, residence, and medical care. In its order, the probate court concluded that the statutory conditions for the appointment of a conservator under § 26-2A-130(c) had been satisfied by clear and convincing evidence because, it determined, Barbara was unable to manage her property and business affairs effectively due to her physical illness, disability, and cognitive impairments, as well as the infirmities of advanced age. This appeal followed.

## II. Discussion

Barbara argues that the probate court lacked personal jurisdiction over her to enter an order appointing a conservator of her approximately $6,000,000 estate. This Court reviews jurisdictional questions de novo. Elliott v. Van Kleef, 830 So. 2d 726 (Ala. 2002). Section 26-2B-203 of the AUAGPPA governs jurisdiction. Specifically, that statute sets out a three-tiered or level-of-priority approach to jurisdictional issues between states, and, under that approach, a court of this state would have personal jurisdiction over a person (1) if the court is the person's home state; (2) if, on the date a petition is filed, this state is a significant-connection state; or (3) if the respondent's home state and all significant-

connection states have declined to exercise jurisdiction because this state is the more appropriate forum or the requirements for special jurisdiction under § 26-2B-204 are met. It does not appear from the record that the probate court considered the jurisdictional analysis required by § 26-2B-203. As previously indicated, DHR represented in its April 15, 2024, petition that jurisdiction was proper in Alabama because, it alleged, Barbara was using this state as a significant-connection state. In response, Barbara asserted in her answer that she was not using this state as a significant-connection state. Rather, she maintained that she was a resident of Georgia and that she was using this state only to acquire temporary housing so that Jerome could be evaluated and treated for an eye condition at a medical facility in Birmingham. In its final order, the probate court stated that it had personal jurisdiction over Barbara and her estate because she was a "legal resident of Jefferson County, Alabama, and is over the age of nineteen (19)." However, that is not the case.

### A. Home-State Approach

Section 26-2B-203(a)(1) provides that a court of this state has jurisdiction to appoint a conservator or issue a protective order for a

8

person when this state is the person's home state.[3] Section 26-2B-201(a)(2), Ala. Code 1975, defines "home state," in relevant part, as "[t]he state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months immediately before the filing of a petition for a protective order or the appointment of a guardian." Section 26-2B-203(a)(1) is inapplicable because it is undisputed that Alabama has never been Barbara's home state. It is also clear that Barbara does not have a home state as defined in § 26-2B-201(a)(2) because, at the time DHR filed its petition, Barbara had not been a resident of a specific state for at least six consecutive months. Barbara moved from Massachusetts to North Carolina, where she remained for approximately three months; she moved from North Carolina to Florida, where she remained for approximately three months; and she moved from Florida to Georgia where, at the time DHR filed its petition, she had resided for only three months. Given Barbara's transient nature, she did not have a home state at the time DHR filed its petition. In fact, Barbara indicated during the proceedings below that

---

[3]Although § 26-2B-203 does not expressly use the term conservator, it is well established that the AUAGPPA applies to the appointment of conservators. See Uniform Comment to § 26-2B-101, Ala. Code 1975.

one of the reasons she had relocated so many times was because representatives of adult protective services had inserted and involved themselves in her circumstances. Accordingly, the probate court did not gain personal jurisdiction over Barbara under the home-state approach.

### B. Significant-Connection-State Approach

Section 26-2B-203(a)(2)(A) provides that a court of this state has jurisdiction to appoint a conservator or issue a protective order if, "on the date the petition is filed, this state is a significant-connection state" and "the respondent does not have a home state or a court of the respondent's home state has declined to exercise jurisdiction because this state is a more appropriate forum." Section 26-2B-201(a)(3) defines a significant-connection state as "[a] state, other than the home state, with which a respondent has a significant connection other than mere physical presence and in which substantial evidence concerning the respondent is available." Section 26-2B-201(b) provides that, in determining whether a respondent has a significant connection with a particular state, the court shall consider:

> "(1) the location of the respondent's family and other persons required to be notified of the guardianship or protective proceeding;

10

"(2) the length of time the respondent at any time was physically present in the state and the duration of any absence.

"(3) the location of the respondent's property; and

"(4) the extent to which the respondent has ties to the state such as voting registration, state or local tax return filing, vehicle registration, driver's license, social relationship, and receipt of services."

There is scant evidence in the record to indicate that, at the time DHR filed its petition, this state was a significant-connection state. It is undisputed that Barbara had no family, other than Jerome, or property in Alabama. The record shows that she had no children, that she was estranged from her husband's children, and that her assets, excluding a minor checking account, were located in another state. Next, at the time DHR filed its petition, Barbara had been in this state for only approximately one week. Finally, there is no evidence indicating that Barbara has any substantial ties to this state other than having a "State ID" and renting an apartment so that her husband could be evaluated and treated for an eye condition at a local medical facility. Thus, because, at the time DHR filed its petition, this state was not a significant-connection state, the probate court did not obtain jurisdiction over Barbara under that approach.

11

C.  More-Appropriate-Forum or Special-Jurisdiction Approaches

Section 26-2B-203(a)(3) provides, in relevant part, that a court of this state has jurisdiction to appoint a conservator or issue a protective order if "the respondent's home state and all significant-connection states have declined to exercise jurisdiction because this state is the more appropriate forum," and § 26-2B-203(a)(4) provides that a court of this state has jurisdiction to appoint a conservator or issue a protective order if "the requirements for special jurisdiction under Section 26-2B-204[, Ala. Code 1975,] are met."  Section 26-2B-203(a)(3) is inapplicable because, at the time DHR filed its petition, Barbara had no home state and there were no significant-connection states that had declined to exercise jurisdiction over her on the basis that Alabama would be a more appropriate forum.  Accordingly, there could be no personal jurisdiction over Barbara under the more-appropriate forum approach.  Finally, the probate court did not acquire jurisdiction over Barbara under § 26-2B-203(a)(4) because the requirements for special jurisdiction under § 26-2B-204 were not met.  Section 26-2B-204 provides that a court of this state lacking jurisdiction under § 26-2B-203 has special jurisdiction to, among other things:

12

"(1) appoint a guardian in an emergency for a term not exceeding 90 days for a respondent who is physically present in this state;

"(2) issue a protective order with respect to real or tangible personal property located in this state."

§ 26-2B-204(a).

Although the probate court initially had the authority to intervene on an emergency basis when Barbara and Jerome first arrived in Birmingham in a critical state, that window closed. Once the immediate emergency subsided, Barbara took deliberate steps to move out of the state, effectively distancing herself from the reach of this state's courts. Her only ties to this state are an expired apartment lease and a dormant, emergency-conservatorship action. She possesses no assets in Alabama and has no real nexus or contacts here. The probate court seemed to acknowledge that much when it indicated in a December 2024 order that Barbara "has not been found by this Court to be a person in need of protection and there is no estate of [Barbara] under the supervision of this Court." The probate court further indicated that "the matter of Barbara W. Tanzer ... has remained pending in this Court since April of [2024]. Petitioner [DHR] is to respond to this Order ... advising the Court whether it intends to proceed or whether it voluntarily dismisses said

13

matter." Nonetheless, DHR continued to pursue its petition and continued to maintain that Barbara was in need of adult protective services primarily because of her vulnerability to financial mismanagement and exploitation. Following a final hearing, the probate court entered its September 2025 order appointing a conservator to manage Barbara's estate.

This Court is once again faced with a situation involving a wealthy, elderly individual who, the probate court found, lacks the capacity to manager her financial affairs See, e.g., Ex parte Bashinsky, 319 So. 3d 1240 (Ala. 2020). From the record before us, it seems that Barbara faces the prospect of being exploited by individuals prioritizing their own self-interest over her well-being, creating a high risk that her assets, consisting of approximately $6,000,000, will be depleted and that she could be left destitute. The facts are undeniable: Barbara requires assistance with her activities of daily living and, with no family resources available, some state agency must intervene as a last resort. But depriving someone of their liberty and removing their right to use their assets is a serious matter, requiring due process of court intervention and oversight. What remains unsettled today is which state has jurisdiction

in this matter? Which state possesses the authority or the obligation to act in Barbara's best interest? Because Barbara has relocated several times over the past two years, the application of residency laws to her situation is ambiguous and uncertain. This jurisdictional vacuum is more than a failure of federalism but appears to be the direct result of Barbara's intentional manipulation of state statutes to avoid admitting and coming to terms with her advanced age, dwindling cognition, and the appropriate use of her resources. Regardless of the causes, some action is required. However, Alabama is not currently positioned to provide that relief, because our jurisdictional statutes are inadequate to address Barbara's specific, current circumstances.

### III. Conclusion

Based on the foregoing, there was no basis for the probate court to acquire personal jurisdiction over Barbara pursuant to § 26-2B-203; thus, the probate court's order appointing a conservator to manage her estate is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

15

Stewart, C.J., and Wise, Mendheim, Cook, McCool, and Parker, JJ., concur.

Shaw, J., concurs in the result.